**In re EMERGENCY BEACON
CORPORATION, Debtor.**

**Bankruptcy Nos. 76 B 356, 77 B 980.**

United States Bankruptcy Court,
S.D. New York.

March 5, 1986.

Kronish, Lieb, Weiner & Hellman, New York City, for debtor; Lawrence J. Kaiser, of counsel.

Barr and Faerber, Spring Valley, N.Y., trustee; Harvey S. Barr, of counsel.

Stephen G. Glatzer, pro se.

## DECISION ON ORDER TO SHOW CAUSE FOR AN ORDER DISMISSING CHAPTER XI PETITION.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The motion before the court is yet another confrontation in the continuing battle between the confirmed debtor, Emergency Beacon Beacon ("the debtor") and Montmartco, Inc. ("Montmartco"), the largest unsubordinated general unsecured creditor of the debtor.[1] Montmartco seeks an order dismissing the debtor's petition for reorganization under Chapter XI of the former Bankruptcy Act of 1898 and directing the debtor to proceed in bankruptcy pursuant to the provisions of a previous order of this court dated September 20, 1985. Dismissal is sought on the ground that the debtor has failed to comply with the terms of this court's September 20, 1985 order, which directed the debtor to perform its obligations under its amended plan of arrangement as confirmed on March 30, 1984.

Montmartco previously sought to revoke the confirmation order by a motion dated March 29, 1985 and an Order to Show Cause dated April 4, 1985, on various grounds such as, that the confirmation order was invalid, that the amended plan of reorganization was not validly approved by the creditors and that the plan contained impermissible provisions affecting shareholders. By order dated May 14, 1985, this court denied Montmartco's motion. *See In re Emergency Beacon Corp.*, 48 B.R. 356, 13 B.C.D. 204 (Bankr.S.D.N.Y.1985). Montmartco appealed this order and that appeal is now pending before the District Court. By an order to show cause dated August 19, 1985, Montmartco then moved for an order pursuant to § 377(1) of the former Bankruptcy Act and former Bankruptcy Rule 11–42(b)(5)(A) dismissing the Chapter XI petition and directing the debtor to proceed in bankruptcy for liquidation on the ground that the debtor had not made its first cash distribution to Montmartco, as required under the confirmed plan of reorganization and had not yet distributed to Montmartco the certificate of indebtedness and the common stock which Montmartco was entitled to receive under the plan. At the hearing of the motion, the debtor's president testified that the cash distribution to Montmartco had been made but that the distribution of the debtor's certificate of indebtedness and common stock called for under the plan had not been made to Montmartco because Montmartco had not executed and returned the I.R.S. Form W–9 which the debtor had mailed to Montmartco. In a decision dated September 10, 1985, the court again outlined the history of the continuing struggle between the debtor and Montmartco and declined to dismiss the Chapter XI petition. *In re Emergency Beacon Corporation* 52 B.R. 828 (Bankr.S.D.N.Y.1985). However, the court directed that if the debtor did not file proof with this court that it had made all of the distributions called for under its confirmed plan of arrangement and issued all of the certificates of indebtedness and common stock required under such plan within ten days from the date of the order to be entered, the court would regard such failure as a default within the meaning of § 377 of the former Bankruptcy Act and

---

1. The proceedings have occasioned numerous decisions of which this is the fifteenth written by this court.

would dismiss the Chapter XI petition and direct the debtor to proceed in liquidation. The court entered an order to this effect on September 20, 1985. This order was appealed by Montmartco. The appeal is also now pending before the District Court.

On September 20, 1985, Stephen G. Glatzer, the president of the debtor, filed with this court his affidavit, sworn to September 19, 1985, wherein he declared: "Pursuant to said Order of Confirmation and subsequent clarifying orders issued by this Court the debtor has disbursed: W–9 forms, stock certificates, certificates of indebtedness, and the first of seven annual payments as required." There is no dispute that Montmartco received a stock certificate, certificate of indebtedness and the first cash installment payment of 1½% of its allowed claim. The distribution was made by the debtor rather than by the former trustee in possession as disbursing agent because the confirmed debtor is now managing its postpetition business operations. This change in operations gave rise to the facts which now form the basis for Montmartco's current motion.

The debtor's president, Mr. Stephen Glatzer, is also the holder of a claim against the debtor by reason of the fact that the debtor's former management reneged on an agreement entered into in 1974 to purchase his shares of the debtor's common stock and to compensate him for not competing with the debtor's business after he terminated his connections with the debtor. The breached purchase agreement with Mr. Glatzer was financed by Montmartco's predecessor corporation, Montco, Inc. The president of these corporate entities is Mr. George Horvath. The struggle between the debtor's principal, Mr. Glatzer, and Montmartco's principal, Mr. Horvath, dates back to the time when Mr. Glatzer was locked out of control of the debtor after the debtor's former management refused to purchase Mr. Glatzer's stock in the debtor and also refused to allow Mr. Glatzer to return as president. The claim by Mr. Glatzer for damages arising out of the breach of contract became largely academic after Mr. Glatzer regained control of the debtor in 1977. Mr. Glatzer continues to hold his stock interest in the debtor and is the debtor's president. Accordingly, in view of the fact that Mr. Glatzer's claim is interposed against his own managerial interests, this court has declared at various times that Mr. Glatzer's claim was to be subordinated to the claims of the general unsecured creditors. Although no formal order was entered to this effect, all of the parties, including Mr. Glatzer, acquiesced as to this point. Hence, for purposes of the confirmed plan, Mr. Glatzer's claim was to be treated as a subordinated general claim.

Notwithstanding Mr. Glatzer's status as a subordinated general creditor, it now appears that when the debtor distributed its certificates of indebtedness and common stock to its unsecured creditors it also distributed a certificate of indebtedness and common stock to Mr. Glatzer. Mr. Glatzer contends that this was done in order to maintain the status quo with regard to his fractional interest in the debtor, and to prevent a voting dilution in favor of Montmartco because Montmartco was given stock under the confirmed plan along with the other unsecured creditors. Mr. Glatzer's attempt to maintain the status quo in this manner was improper. Moreover, Mr. Glatzer's receipt of the debtor's certificate of indebtedness and common stock did not merely maintain the status quo because Mr. Glatzer also received approximately $3000 in cash. This distribution represented a pro rata fraction of a 5% return on the debtor's gross annual sales to which the debtor's unsecured creditors were entitled as a dividend in connection with the debtor's stock, distributed to them under the confirmed plan of reorganization as additional consideration for their claims. Thus, Mr. Glatzer's subordinated claim yielded a return to him notwithstanding the fact that a subordinated creditor was not entitled to a distribution under the plan. This fact is significant because the distribution of dividends to all general unsecured creditors is set at an aggregate of the debtor's gross annual sales. Therefore,

the dividend paid to the general unsecured creditors should have included the approximately $3000 dividend received by Mr. Glatzer, notwithstanding the fact that this additional amount would represent an imperceptable increase to them.

Montmartco's present motion reflects a concern not so much with the fact that the debtor originally failed to make distributions to Montmartco under the plan, but that even though the debtor eventually did make such distributions it also issued a certificate of indebtedness and common stock to Mr. Glatzer, who also received a share of the 5% payment based on the debtor's gross sales which the shareholders were entitled to received under the plan. The debtor did recognize in part Mr. Glatzer's subordinated status because it did not make any payment to Mr. Glatzer, as it did to the other unsecured creditors, with respect to the first cash installment at the rate of one and one-half cents on each dollar of allowed unsecured claims.

## JURISDICTION

The trustee in possession maintains that this court lacks jurisdiction over Montmartco's present motion because Montmartco has filed a notice of appeal with respect to this court's denial of its previous motion to dismiss the debtor's Chapter XI petition, as set forth in this court's order dated September 20, 1985. The trustee in possession argues that Montmartco's previous motion, which is the subject of a pending appeal, involves the same subject matter that forms the basis for Montmartco's present motion.

■ The filing of a notice of appeal normally divests the lower court of jurisdiction to proceed with respect to the matters raised. *Bialac v. Harsh Investment Corporation (In re Bialac)*, 694 F.2d 625 (9th Cir.1982); *Crateo, Inc. v. Intermark, Inc. (In re Crateo, Inc.)*, 536 F.2d 862, 869 (9th Cir.1976), *cert. denied*, 429 U.S. 896, 97 S.Ct. 259, 50 L.Ed.2d 180 (1976); *In re Eddis*, 37 B.R. 217 (E.D.Pa.1984); *First National Bank of Boston v. Overmyer (In re Overmyer)*, 53 B.R. 952, 954 (Bankr.S.D. N.Y.1985). This is so because a bankruptcy judge does not have concurrent jurisdiction with the district court over the subject matter of an appeal. *In re Overmyer*, 53 B.R. at 954. Once a notice of appeal is filed "no lower court should be able to vacate or modify an order under appeal, not even a bankruptcy court attempting to eliminate the need for a particular appeal." *Bennett v. Gemmill (In re Combined Metals Reduction Co.)*, 557 F.2d 179, 201 (9th Cir.1977). The rationale for this rule is the avoidance of confusion and waste of time that might result from putting the same issues before two courts at the same time. 9 Moore's Federal Practice, ¶ 203.11 (2d ed. 1985).

■ Montmartco's previous motion sought a dismissal of the Chapter XI petition because of the debtor's failure to complete the distribution called for under the plan by reason of the debtor's delay in delivering to Montmartco the certificate of indebtedness, the common stock and the cash installment of one and one-half cents on each dollar of allowed claims. Montmartco's present motion also seeks a dismissal of the debtor's Chapter XI petition, but for additional reasons. Montmartco now argues that Mr. Glatzer, as a subordinated, unsecured creditor should not have caused the debtor to issue to him the certificate of indebtedness and the shares of the debtor's common stock upon which the $3000 dividend payment was made. The fact that Mr. Glatzer did not receive the first 1½% cash installment paid to the debtor's other unsecured creditors was not sufficient compliance with the accepted position that Mr. Glatzer's unsecured claim was totally subordinated until all of the debtor's creditors were paid in full under the confirmed plan of reorganization. This point, as to Mr. Glatzer's self-dealing, was not previously raised by Montmartco, nor was it addressed by this court in the decision culminating in the September 20, 1985 order, which is presently on appeal to the district court. Therefore, the issue of Mr. Glatzer's disregard of his status as a subordinated unsecured creditor is not an is-

sue raised by the pending appeal and is therefore a matter which this court possesses jurisdictional authority to address, notwithstanding such appeal.

## SELF–DEALING

The remedy requested by Montmartco because of Mr. Glatzer's self-dealing, namely dismissal of the Chapter XI petition, reversal of the order of confirmation and liquidation of the debtor, if granted, would inflict a drastic penalty upon the debtor's other unsecured creditors, who are not privy to the ten-year battle between Montmartco's principal officer, George Horvath, and the debtor's principal officer, Stephen Glatzer. The debtor's creditors have accepted the plan of reorganization and anticipate receiving further distributions under the plan. No creditor, other than Montmartco, has objected to the plan or has sought a liquidation of the debtor. Indeed, Montmartco has not given notice to the debtor's creditors of its request to have the debtor liquidated. It is not clear at this point that any benefit would accrue to the unsecured creditors if the debtor were directed to proceed with a liquidation. The debtor's major tangible asset is the building in which it manufactures electronic beacons for use in locating downed aircraft. This building is subject to two substantial mortgages. The equity remaining would be applied to the payment of the additional administration expenses that would arise in a liquidation case. The patents under which the emergency electronic beacons are manufactured have but a few remaining years of exclusivity. The debtor's business is generated as a result of Mr. Glatzer's experience in this field and his know-how as an electrical engineer. The electronic locators that are produced by the debtor are approved by the Federal Aviation Administration as safety devices in aircraft and serve to protect the crew and passengers of aircraft in which the devices are installed. As such, the debtor's products are beneficial to the public in general. In light of these facts, it would appear that Mr. Glatzer's self-dealing, to which Montmartco correctly objects, can be remedied without liquidating the debtor corporation and throwing out the baby with the bath water.

Accordingly, Mr. Glatzer is directed to return to the debtor the certificate of indebtedness and all the shares of the debtor's common stock which he caused to be issued to himself pursuant to the plan of reorganization. These documents shall be cancelled and may not be reissued directly or indirectly to Mr. Glatzer, or to any entity for his benefit while all of the debtor's unsecured creditors have not been paid in full in accordance with the plan of reorganization. Mr. Glatzer shall also repay the debtor all of the funds which were distributed to him as a dividend with respect to the debtor's shares of stock which were improperly issued to him, amounting to approximately $3000. This amount shall be added to the funds available for distribution to the debtor's creditors with the second installment due under the confirmed plan. Mr. Glatzer shall file with this court within three days after the entry of the order with respect to this motion a sworn statement reflecting that he has complied with the court's directions. Montmartco is awarded the sum of $1000 as attorneys' fees for having to make this motion to compel the debtor to comply with the concept of the agreed subordination of Mr. Glatzer's claim. However, Montmartco's motion to dismiss the debtor's petition for reorganization and to direct the debtor to proceed in bankruptcy for liquidation, is denied as too drastic a remedy in so far as it affects the interests of the debtor's other unsecured creditors who have neither been notified of this motion nor have joined in the requested relief.

SUBMIT ORDER on notice in accordance with the foregoing determination.