**In re WONDER CORPORATION OF AMERICA, Debtor.**

**Bankruptcy No. 5–86–00436.**

United States Bankruptcy Court,
D. Connecticut.

Jan. 20, 1988.

Christopher R. Belmonte, Lane & Mittendorf, New York City, for Waldco.

Douglas A. Strauss, David A. Greenberg, Pullman, Comley, Bradley & Reeves, Bridgeport, Conn., for Wonder Corp. of America.

Edward F. Hennessey, Janet C. Hall, Robert A. Izard, Jr., Robinson & Cole, Hartford, Conn., for Chase Manhattan Bank, N.A. and Robinson & Cole.

## MEMORANDUM OF DECISION ON AMENDED MOTION FOR IMPOSITION OF SANCTIONS

ALAN H.W. SHIFF, Bankruptcy Judge.

This court must decide whether it has jurisdiction over a motion for sanctions awarding attorney's fees when its earlier decision concerning attorney's fees under Code § 506(b) is on appeal to the District Court.

### I

On June 27, 1986, Wonder Corporation of America filed for protection under chapter

7 of the Bankruptcy Code. On September 18, 1986, the case was converted to chapter 11. From the inception of this case, Chase Manhattan Bank N.A., along with two other banks,[1] were oversecured creditors. Notwithstanding that status, Chase vigorously opposed Wonder's attempt to reorganize. As noted in *In re Wonder Corporation of America,* 72 B.R. 580 (Bankr.D. Conn.1987), Chase's opposition continued even after February 3, 1987 when Wonder and Waldco, Inc. filed a disclosure statement and plan, and Chase knew that it was to be paid in full on the effective date of the plan. *Id.* at 590. "Accordingly, there was never any appreciable risk at any time that [Chase] would not be paid in full in accordance with applicable bankruptcy law." *Id.* I therefore disallowed 515 of the requested 1,290 hours claimed by Chase under § 506(b)[2] "as blatant and totally unproductive obstruction in the administration of this case." *Id.* at 592.

> [Such] "time [was] attributable to motions for relief from the automatic stay; opposition to administrative expenses of the chapter 7 trustee; opposition to the Withdrawal of Wonder's original attorneys; services in connection with the disclosure statements and plans; time spent with respect to an interbank letter of credit dispute; [and] time spent on a frivolous and procedurally flawed appeal from the court's scheduling order on § 503 and § 506(b) fees and expenses ...
>
> None of those activities served any legitimate purpose. For example, ... attempts to obtain relief from the automatic stay had no realistic chance of success, but Wonder was required to meet that challenge ... Similarly, despite the fact that the Proponents proposed to pay the full amount of [Chase's] allowed claims on the effective date of the plan, the attorneys for [Chase] performed ... excess[ive] hours in connection with the disclosure statement and plan, the effect of which was to delay the process by which their [client was] to be paid....
> In addition, opposition to the chapter 7 trustee's expenses, which have a lower priority than [Chase's] secured claim and which are in any event *de minimis* was unlikely to succeed and added nothing to [Chase's] protection.

*Id.* at 592–3.

I then found that a large number of the 775 remaining hours had "not only strong overtones of unnecessary services but [were] also tainted by excessive duplication, both of which have resulted in grossly inflated fees," *Id.* at 593. I accordingly reduced those hours by 66⅔%, which resulted in an allowance of 258 hours of attorney's fees under § 506(b).

Perhaps buoyed by that decision, Wonder and Waldco, Inc. [collectively "Wonder"] have filed a motion for the imposition of sanctions in the form of assessment of attorney's fees against Chase and its counsel, Robinson & Cole, [collectively "Chase"] under Bankr.Rule 9011,[3] 28 U.S.C. § 1927,[4]

---

1. The two other banks, Old Stone Bank and Societe Generale, have been paid their claims in full and are no longer involved in any aspect of this case. Therefore, although the pre-confirmation conduct herein ascribed to Chase was actually shared by all the banks, it is no longer relevant to refer to the other banks' conduct. Moreover, "it must be observed that, with the exception of a minor skirmish between Chase and Societe over a letter of credit, the Banks essentially shared a common if not an identity of interest as to which they took similar if not identical positions." *In re Wonder Corp. of America,* 72 B.R. 580, 592 (Bankr.D.Conn.1987).

2. Section 506(b) provides as follows:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

3. Bankruptcy Rule 9011 provides, in relevant portion, as follows:

> **Rule 9011. Signing and Verification of Papers.**
> **(a) Signature.** Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, except a list, schedule, statement of financial affairs, statement of executory contracts, statement of intention, Chapter 13 Statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name, whose office address and telephone

and this court's inherent equity powers, for "... a course of conduct, ... often employed without legal or factual basis, with the purpose and effect of harassing the joint proponents, delaying the resolution of this case, the reorganization of the debtor and the payment of all creditors—including Chase itself—and increasing the costs of litigating this case." Amended Motion, ¶ 7.

Specifically, Wonder identifies nine categories of sanctionable conduct designated as paragraphs II–A through H and III and summarized here as follows:

II–A—"Cash Collateral Matters." Although fully secured, Chase opposed Wonder's attempts to use cash collateral and to borrow money from Waldco.

II–B—"Motion for Appointment of Trustee." On January 8, 1987, Chase filed a motion for appointment of a trustee or appointment of an examiner. "Because the claims of Chase ... already were secured by interests in virtually all of Wonder's real and personal property, this motion was unreasonable and had no chance of success on the merits." Amended Motion ¶ 18. A hearing was never held on the motion.

II–C—"Opposition to Motions to Substitute Attorneys for Debtor and to Admit Attorney for Waldco Pro Hac Vice." Wonder contends that Chase unreasonably opposed a motion to admit Christopher R. Belmonte, Esq., of the law firm of Lane & Mittendorf, *pro hac vice* as attorney for Waldco and a motion by Wonder's original attorneys seeking permissive withdrawal from the case and appointment of the law firm of Pullman, Comley, Bradley & Reeves in their place. Wonder also maintains that Chase's attorneys unreasonably subjected Douglas A. Strauss, Esq. of Pullman, Comley, Bradley & Reeves to lengthy cross-examination regarding his firm's relationship with Waldco.

II–D—"Impairment and Objections to Disclosure Statement and Amended Plan." On March 4, 1987, at a hearing continued from March 3, 1987, Chase filed an objection to the February 2, 1987 Plan of Reorganization, even though the plan provided that Chase was to be paid in full on the effective date of the plan.[5]

II–E—"Issuance of Defective Subpoenas." On February 27, 1987, Chase purported to serve eight subpoenas to depositions and subpoenas *decus tecum* on non-parties to the case. Wonder maintains that the subpoenas were invalid as a matter of law and were meant to delay a resolution of the case.

II–F—"Chase's Fee Application." On March 19, 1987, Chase submitted an application for § 506(b) fees which sought reimbursement of $197,437.94 for attorney's fees and disbursements which it had paid to its attorneys. Chase's attorneys admitted during a hearing that only a portion of those billed fees had actually been paid.

II–G—"Post-Confirmation Conduct." Wonder contends that Chase unreasonably opposed a modification of the April 7, 1987 confirmation order which would

number shall be stated.... The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

**4.** 28 U.S.C. § 1927 (1982) provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

**5.** This court ruled that Chase was unimpaired and lacked standing to object to confirmation of the plan. *See, In re Wonder Corporation of America,* 70 B.R. 1018 (Bankr.D.Conn.1987).

allow Wonder to close on a sale of real property and pay Chase's allowed claims. Chase and the other banks required Wonder to fund an escrow account with the difference of the amount of their requested § 506(b) fees and the amount allowed by this court. Subsequently, only Chase and Old Stone appealed this court's decision concerning § 506(b) fees, and Old Stone eventually withdrew its appeal. Nevertheless, Chase objected to Wonder's later motion to reduce the escrow amount to reflect the withdrawn appeals.

II–H—"Improvident Appeals." "Despite the fact that the Plan provided for payment in full of its allowed claim, and despite the fact that the court ruled as a matter of law that it lacked standing to object to the confirmation of the Plan, Chase took a number of appeals from orders of the Court approving the Disclosure Statement and confirming the Plan, as well as other orders." Amended Motion ¶ 66.

III—"Motion and Amended Motion for Imposition of Sanctions." On June 5, 1987, Wonder filed a Motion for Imposition of Sanctions against Chase and its attorneys. "Despite the fact that the memorandum fully detailed the activities of Chase for which sanctions are sought, at a pretrial conference ... Robinson & Cole demanded that Wonder detail these activities in the motion itself." Amended Motion ¶ 75. Wonder was therefore required to file an Amended Motion for Imposition of Sanctions and an additional memorandum.

On November 3, 1987, Chase moved to dismiss Wonder's amended motion, asserting lack of jurisdiction over paragraphs II–A through F because they involve the same subject matter as this court's ruling on § 506(b) fees now on appeal. Chase concedes that this court has jurisdiction over paragraphs II–G and III,[6] but argues that the entire motion should be referred *sua sponte* to the District Court in the interest of judicial economy. Finally,

Chase maintains that only the District Court may exercise jurisdiction over paragraph II–H because appellate conduct may only be sanctioned by an appellate court.

## II

## A

### Paragraphs II–A Through F

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982) (per curiam); *see also, Leonhard v. United States,* 633 F.2d 599 (2d Cir.1980), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981). Similarly, the filing of a notice of appeal to a district court divests a bankruptcy court of jurisdiction to proceed with respect to matters raised by such appeal. *In re Neuman,* 67 B.R. 99, 101 (S.D.N.Y.1986); *In re Emergency Beacon Corp.,* 58 B.R. 399, 402 (Bankr.S.D.N.Y. 1986); *In re Overmyer,* 53 B.R. 952, 954 (Bankr.S.D.N.Y.1985); *In re Kendrick Equipment Corp.,* 60 B.R. 356, 358 (Bankr. W.D.Va.1986); *In re Hardy,* 30 B.R. 109, 111 (Bankr.S.D.Ohio 1983). The divestment of jurisdiction is meant to preserve the integrity of the appellate process by avoiding the needless confusion which would assuredly flow from putting the same issue before two courts at once. *In re Emergency Beacon Corp., supra,* 58 B.R. at 402, *citing,* 9 *Moore's Federal Practice,* ¶ 203.11 (2d Ed.1985); *In re Kendrick,* 60 B.R. at 358; *Matter of Urban Development Ltd., Inc.,* 42 B.R. 741, 743–4 (Bankr.M.D.Fla.1984). Thus the question evolves, does Wonder's motion for sanctions put in issue findings reached by this court and challenged by Chase's appeal? It does as to paragraphs II–A through F.

---

**6.** Chase's Memorandum in Support of its Motion to Dismiss, 29; Oral Argument, December 2, 1987.

■ As noted, 80% of the hours of attorney's fees claimed by Chase under § 506(b) were disallowed "as blatant and totally unproductive obstruction in the administration of this case ..." *In re Wonder, supra,* 72 B.R. at 592. That conduct is the subject matter of paragraphs II–A through F of Wonder's amended motion. And, that same conduct, found in the § 506(b) ruling, is the subject of Chase's appeal. Chase's Statement of Issues on Appeal ¶¶ IX and XIV; *see also* Chase's Memorandum in Support of its Motion to Dismiss ¶ II ("[o]n a more general basis it should also be recognized that the reasonableness and propriety of Chase's Fee Application under 506(b) (Count F), and consequently, the conduct of Chase, which was reviewed therein, (Counts A–E), is also now before the District Court.").

Wonder argues that the United States Supreme Court has implicitly recognized in *White v. New Hampshire Department of Employment Security,* 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982) that a lower court retains jurisdiction to award attorney's fees and sanctions after a notice of appeal has been filed. Wonder also cites *Langham–Hill Petroleum v. Southern Fuels, Inc. Co.,* 813 F.2d 1327 (4th Cir. 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 99, 98 L.Ed.2d 60 (1987); *Masalosalo v. Stonewall Insurance Co.,* 718 F.2d 955 (7th Cir.1983); and *Overnite Transportation Co. v. Chicago Industrial Tire Co.,* 697 F.2d 789 (7th Cir.1983), in support of that contention.[7] Those cases are readily distinguishable, however, because in each, the applications for attorney's fees raised different issues than those on appeal.

*White v. New Hampshire* involved a civil rights action. In civil rights actions, the "prevailing party" is entitled to an allowance of attorney's fees, *see* 42 U.S.C. § 1988, and the issue on allowance of such fees is an assessment of the proper amount of fees, rather than a redetermination of the merits. The Court recognized that dis-tinction and held that, notwithstanding the pendency of an appeal, the lower court retains jurisdiction over the allowance of § 1988 attorney's fees "which are uniquely separable from the cause of action to be proved at trial". 455 U.S. at 452, 102 S.Ct. at 1166.

In *Langham–Hill Petroleum* and *Masalosalo,* after the losing parties filed notices of appeal from summary judgment, the prevailing parties filed motions for attorney's fees, claiming that their clients were subjected to frivolous litigation. Because the appeals involved the merits of the action rather than the conduct of the parties in commencing the actions, both cases followed *White* and held that the district courts retained jurisdiction over the parties' conduct and the fee issue.

Here, however, as noted, the subject matter of paragraphs II–A through F of Wonder's amended motion is the same subject matter on appeal. The appeal therefore removes this court's jurisdiction over paragraphs II–A through F.

**B**

**Paragraphs II–G, II–H, and III**

Chase concedes that this court has jurisdiction over paragraphs II–G and III of Wonder's amended motion for sanctions, but challenges paragraph II–H on that basis.

■ Trial courts lack authority to impose sanctions for an appellant's behavior. As Chase points out, "the question whether an appeal is so frivolous as to warrant the imposition of attorney's fees should be determined by the appellate court rather than by the court that rendered the initial decision." *Matter of Emergency Beacon Corp.,* 790 F.2d 285, 286 (2d Cir.1986); *citing, Sierra Club v. U.S. Army Corps of Engineers,* 776 F.2d 383, 392 (2d Cir.1985), *cert. denied,* 475 U.S. 1084, 106 S.Ct. 1464, 89 L.Ed.2d 720 (1986).[8] Accordingly, this

---

7. *Overnite Transportation Co., supra,* dealt with a district court's jurisdiction to award fees *after* its judgment on the merits had already been affirmed on appeal and is totally inapplicable to this matter and will not be treated further.

8. Wonder conceded during oral argument that *Emergency Beacon* is controlling here. Oral Argument, December 2, 1987.

court lacks jurisdiction over paragraph II–H, relating to "Improvident Appeals".

## C

### Reference to District Court

■ Chase argues that this court should, *sua sponte*, transfer Wonder's amended motion for sanctions to the District Court.[9] I must decline. This court may not transfer cases or proceedings to the District Court.

Bankruptcy court jurisdiction in this District emanates from 28 U.S.C. § 157(a) which provides:

> Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

28 U.S.C. § 157(a) (Supp. II 1984), and the September 21, 1984 order of the United States District Court for the District of Connecticut which provides in pertinent part:

> It is now ORDERED ... that all cases under Title 11, U.S.C., and all proceedings arising under Title 11, U.S.C., or arising in or related to a case under Title 11, U.S.C., pending on June 27, 1984, or filed on or after June 28, 1984, are referred to the Bankruptcy Judges for the District, to be assigned in accordance with their assignment rules.

Under the congressional scheme, once a case or a proceeding has been referred to the bankruptcy judges of a district, 28 U.S.C. § 157(d) provides the only procedure for the withdrawal of that reference. Section 157(d) provides:

> (d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) (Supp. II 1984).

■ As observed in *In re Oceanquest Feeder Service, Inc.*, 56 B.R. 715, 719–20 (Bankr.D.Conn.1986).

> Surely the District Court didn't refer cases to me with the expectation that I would decline to decide these matters and refer them back to that Court for an appropriate order. While I recognize that § 157(b)(1) states that I "may" enter appropriate orders on core proceedings,[10] it would be short sighted to read that language without a reference to § 157(d). The intent of § 157 was to have bankruptcy judges enter dispositive orders on referred core matters unless the reference of those matters was withdrawn by the district court "on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). Section 157 does not provide and the District Court's general order of reference does not contemplate that a bankruptcy judge may modify the reference of a core proceeding.

*Accord; In re Epi–Scan, Inc.*, 71 B.R. 975, 976 n. 1 (Bankr.D.N.J.1987) ("relief [under § 157(d) ] should properly be sought in the District Court."); *Matter of Hawkeye Chemical Co.*, 73 B.R. 318, 320 (Bankr.S.D. Iowa 1987) ("A motion for withdrawal of the reference must be brought in the district court."); *In re Bedford Computer Corp.*, 61 B.R. 594, 595 (Bankr.D.N.H.1986) ("issue [of withdrawal of reference] is not properly before this court but rather would only be properly directed to the U.S. district court judge.").

## III

For the foregoing reasons Chase's motion to dismiss Wonder's amended motion

---

9. *See* Memorandum of Chase in Opposition to Memorandum in Support of Prompt Decision, p. 6.

10. A motion for sanctions under Bankruptcy Rule 9011 is a core proceeding, *see, Fox v. Boucher*, 794 F.2d 34 (2d Cir.1986), *Brown v. Mitchell*, 827 F.2d 1219, (8th Cir.1987), *In re Silver*, 46 B.R. 772, 773 (D.Colo.1985).

for sanctions is granted as to paragraphs II–A through F and H and denied as to paragraphs II–G and III, as to which a status conference is to be scheduled by the Clerk of this court, and

IT IS SO ORDERED.