**In re Marguerite C. McDONOUGH, Debtor.**

**Marguerite C. McDONOUGH, Plaintiff,**

**v.**

**PLAISTOW COOPERATIVE BANK, Defendant.**

**Bankruptcy No. 93–42569–HJB. Adv. No. 93–4276.**

United States Bankruptcy Court, D. Massachusetts.

March 29, 1994.

**10**

Peter M. Stern, Springfield, MA, for debtor.

L. Jed Berliner, Springfield, MA, for Plaistow Co-op. Bank.

### MEMORANDUM

HENRY J. BOROFF, Bankruptcy Judge.

## I. BACKGROUND

The matter before the Court arises from a "Complaint to Determine Extent and Priority of Liens" ("Complaint") filed by Plaintiff, Marguerite C. McDonough (the "Plaintiff" or the "Debtor"), against Defendant, Plaistow Cooperative Bank (the "Defendant" or "Plaistow"), in which the Plaintiff, pursuant to 11 U.S.C. § 506(d), seeks to avoid a judicial lien held by Plaistow on the Debtor's real estate located at 48 Hillcrest Park, South Hadley, MA (the "Property").

The procedural history of this case is not complex. The case was commenced under Chapter 13 of the Bankruptcy Code on September 22, 1993. On October 15, 1993, the Debtor filed her Chapter 13 Plan (the "Plan"), which provided, *inter alia*, for treatment of the judicial lien claim of Plaistow. Pursuant to the Plan, Plaistow was described as an "undersecured creditor" and treated as "an unsecured creditor." Plaistow filed no timely objection to the Plan,[1] and the Plan was confirmed by an order entered by Judge Queenan on November 17, 1993. On December 3, 1993, Plaistow filed "Motion to Revoke Order of Confirmation; Alternative Motion for Rule 2004 Examination." The latter alternative was allowed by the Court on December 10, 1993.

On November 17, 1993, the Debtor filed the instant adversary proceeding. In her

---

1. Plaistow's counsel claims to have inadvertently failed to file an objection. To the extent that the objection would have made arguments similar to those made in this proceeding, the omission appears to be moot.

Complaint, the Debtor alleges that: (i) the value of the Property is approximately $65,000, (ii) the Debtor has claimed an exemption on the Property, pursuant to 11 U.S.C. § 522(d), in the amount of $7,500, and (iii) the Property is encumbered by a first mortgage held by People's Savings Bank, with the outstanding balance due on the underlying note and mortgage of approximately $77,000. Inasmuch as Plaistow holds a judicial lien on the Property in the approximate amount of $38,000 junior to the first mortgage, the Debtor requests that the Court determine the lien void pursuant to § 506(d).

In its Answer to the Complaint, and again at the Pre–Trial Conference on the Complaint, Plaistow asserted three arguments. First, Plaistow argues that the voiding of its lien, pursuant to § 506(d), is proscribed by the Supreme Court's decision in *Dewsnup v. Timm*, —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). Second, Plaistow argues that its judicial lien is secured only by the Debtor's residence and, therefore, any modification of its "rights" are proscribed by the Supreme Court's decision in *Nobelman v. American Savings Bank*, —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). Third, Plaistow argues that the voiding of its lien is not timely until after the Debtor has fully performed under the Plan and been granted a discharge pursuant to 11 U.S.C. § 1328. The facts being largely undisputed, the Court took Plaistow's arguments, as stated in its pleadings, under advisement.

## II. DISCUSSION

### A. Section 506(d)

The availability of lienstripping as a debtor's tool to reduce a secured claim to the value of its underlying collateral has been the subject of considerable controversy. The fairness of the procedure being much in the eyes of the beholder, the Courts have struggled to find the statutory basis for either the allowance or prohibition of lienstripping. Those efforts have resulted in opinions so limited to their facts or so limited in scope as to only spawn more creative argument under alternative circumstances. *See e.g., Nobelman*, —— U.S. ——, 113 S.Ct. 2106 (11 U.S.C. § 1322(b)(2)'s limited exception protects claims secured solely by debtor's principal residence); *Ford Motor Credit Co. v. Lee (In re Lee)*, 162 B.R. 217 (D.Minn.1993) (Chapter 13 debtors were permitted to "strip down" a lien on their vehicle to its value on the date of the filing of the petition); *Dever v. Internal Revenue Serv. (In re Dever)*, 164 B.R. 132 (Bankr.C.D.Cal.1994) (Chapter 11 consumer debtors were permitted to "strip down" tax liens on their residence); *Hirsch v. Citicorp Mortgage Corp. (In re Hirsch)*, 155 B.R. 688 (Bankr.E.D.Pa.1993) (Chapter 13 debtor was permitted to use § 506(a) to "strip down" mortgagee's lien that was secured not only by debtor's principal residence but also by rents, profits and fixtures).

The Supreme Court first attempted to grapple with lienstripping in the *Dewsnup* decision. The *Dewsnup* case was limited to lienstripping in the Chapter 7 context. —— U.S. at —— n. 3, 112 S.Ct. at 778 n. 3. Justice Blackmun, writing for the majority, declined to read §§ 506(a) and 506(d)[2] as complimentary and held that § 506(d) does not authorize lienstripping in Chapter 7 cases. *Id.* at ——, 112 S.Ct. at 778. The

---

2. Section 506(a) provides:

   (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

   11 U.S.C. § 506(a).

   Section 506(d) provides:

   (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
   (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
   (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

   11 U.S.C. § 506(d).

12

Court reasoned that the language of § 506(d) did not overrule the pre-Code convention that liens on real property survive bankruptcy unaffected, and § 506(a), in defining an "allowed secured claim", provided little or no guidance as to any Congressional intent to change that pre-Code practice. *Id.* Given the absence of clear legislative history and the ambiguities present within the statutory text of § 506, the *Dewsnup* Court declined to depart from the pre-Code practice. *Id.* at ——, 112 S.Ct. at 779. However, notwithstanding its willingness to proscribe lienstripping in Chapter 7 cases, the Court dramatically limited its holding, noting, "[h]ypothetical applications that come to mind and those advanced at oral argument illustrate the difficulty of interpreting the statute in a single opinion that would apply to all possible fact situations." *Id.* at ——, 112 S.Ct. at 778. Left unresolved was the applicability of *Dewsnup* in Chapter 11, 12 and 13 cases. *See Id.* at —— n. 3, 112 S.Ct. at 778 n. 3.

The *Nobelman* decision only indirectly casts light upon the applicability of *Dewsnup* under Chapter 13. In *Nobelman*, the Supreme Court held that § 1322(b)(2), which prohibits modification of a claim secured only by the debtor's principal residence, bars bifurcation of such a claim into secured and unsecured claims under § 506(a). —— U.S. at ——, 113 S.Ct. 2106. Left unsaid was the contrary implication that such bifurcation and the attendant avoidance under § 506(d) would have been permissible, absent § 1322(b)(2)'s exclusion.

Notwithstanding the failure of the Supreme Court to make a clear statement to date on the applicability of lienstripping in reorganization cases, it is clear that such lien reduction is at the very foundation of reorganization under each of these chapters. *In re Dever,* 164 B.R. at 143 ("... to bar lienstrip-

ping in reorganization cases under Chapters 11, 12, or 13, would in essence, gut the sum and substance of the reorganization and rehabilitation of debt concept under the Bankruptcy Code."); *In re Leverett,* 145 B.R. 709, 713 (Bankr.W.D.Okla.1992) ("The survival of all liens would preclude the finality necessary to the success of such rehabilitative efforts, and would render § 506(a) virtually meaningless in [Chapter 12 and 13] cases.").

Furthermore, the language of the *Dewsnup* decision itself distinguishes its applicability in reorganization cases from Chapter 7 cases. —— U.S. at ——, 112 S.Ct. at 779. The *Dewsnup* Court, dealing strictly with lienstripping in the Chapter 7 context, was hard-pressed to find any Congressional intent to vary from the pre-Code practice in liquidation cases of allowing liens to pass through bankruptcy unaffected. *Id.* As Justice Blackmun noted:

*[a]part from reorganization proceedings, see* 11 U.S.C. §§ 616(1) and (10) (1976 ed.), no provision of the pre-Code statute permitted involuntary reduction of the amount of a creditor's lien for any reason other than payment on the debt. . . . Furthermore this Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in the pre-Code practice that is not the subject of at least some discussion in the legislative history.

*Id.* (emphasis supplied). The concerns raised by the Court in *Dewsnup* are not applicable in the Chapter 13 context. Section 1322(b)(2)[3] explicitly gives Chapter 13 debtors the right to modify the rights of secured creditors, except where specifically excluded. Furthermore, 11 U.S.C. § 1325(a)(5)[4] permits the Court to confirm a

3. Section 1322(b)(2) provides:
(b) Subject to subsections (a) and (c) of this section, the plan may—
(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.
11 U.S.C. § 1322(b)(2).

4. Section 1325(a)(5) provides:

(a) Except as provided in subsection (b), the court shall confirm a plan if—
(5) with respect to each allowed secured claim provided for by the plan—
(A) the holder of such claim has accepted the plan;
(B)(i) the plan provides that the holder of such claim retain the lien securing such claim, and
(ii) the value, as of the effective date of the plan, of property to be distributed under the

plan over a secured creditor's objection where the secured creditor retains its lien and the debtor distributes property of a value, as of the effective date of the plan, not less than the allowed amount of such secured claim. The legislative intent relative to § 1325 could not be clearer.

> With respect to secured claims provided for by the plan, the holder of the claim must have accepted the plan, or the debtor must either distribute under the plan the value, as of the effective date of the plan, to the holder of the claim, property of a value that is not less than *the allowed amount of the secured claim, as determined under proposed 11 U.S.C. [§] 506(a),* or the debtor must surrender the property securing the claim to the holder of the claim.

H.R.Rep. No. 595, 95th Cong., 1st Sess. .430 (1977); U.S.Code Cong. & Admin.News 1978, pp. 5787, 6385 (emphasis supplied). The legislative history, therefore, approves bifurcation.

In §§ 1322(b) and 1325, this Court finds a specific legislative intent to vary from any pre-Code practice allowing liens to pass through bankruptcy unaffected. More importantly, in the above mentioned legislative history, this Court finds in Chapter 13 cases the crucial nexus between the modification of secured claims and § 506(a)'s definition of "allowed secured claim", which nexus the *Dewsnup* Court could not find in the Chapter 7 context. *See Dewsnup,* —— U.S. at —— n. 3, 112 S.Ct. at 778 n. 3.

■ In view of the foregoing, this Court adopts the reasoning that 11 U.S.C. § 506 is a methodology which enables Chapter 13 debtors to strip down liens falling outside of *Nobelman's* carved out exception in § 1322(b)(2).

> plan on account of such claim is not less than the allowed amount of such claim; or
> (C) the debtor surrendering the property securing such claim to such holder.
> 11 U.S.C. § 1325(a)(5).

**5.** A "judicial lien" is defined as a "lien obtained by judgment, levy, sequestration, or other legal

### B. Section 1322(b)(2)

Having determined that lienstripping is available in the Chapter 13 context, we now turn to Plaistow's argument that its judicial lien [5] may not be modified on account of § 1322(b)(2)'s exclusion and the *Nobelman* decision. Plaistow argues that its only collateral is the Debtor's principal residence and, therefore, § 1322(b)(2) applies.

■ Plaistow's reliance on § 1322(b)(2) is misplaced. The narrow exclusion of that section applies to "only ... a security interest." The Bankruptcy Code defines a "security interest" as a "lien created by an agreement." 11 U.S.C. § 101(51). A judicial lien is not a lien created by an agreement. It is a lien created by court action. Therefore, a judicial lien does not fall within § 1322(b)(2)'s exclusion and the *Nobelman* decision does not apply. *See In re Cullen,* 150 B.R. 1, 2 (Bankr.D.Me.1993).

### C. Section 1328

Finally, the Court is left to address Plaistow's argument that an action seeking lien avoidance is premature until the Plan is fully performed and a discharge is entered pursuant to § 1328.

■ From a procedural posture, Plaistow's failure to timely object to the Plan precludes Plaistow from objecting to the avoidance of its lien in any context. This Court relies on the "law of the case" doctrine which prevents reconsideration of issues which have been decided either expressly or by necessary implication through final judgments and orders of the court, including decisions that were issued without opinion. *Shimer v. Fugazy (In re Fugazy Express, Inc.),* 159 B.R. 432, 438 (Bankr.S.D.N.Y. 1993). Accordingly, the instant Complaint is moot. The issue which the Debtor seeks to resolve has already been determined in its favor.[6]

or equitable process or proceeding." 11 U.S.C. § 101(36).

**6.** In oral argument, Debtor's counsel argued that the primary motive for filing the instant complaint was to clarify title at the Registry of Deeds. It seems to this Court that counsel should be able to find easier methods of educating title examiners than to file an adversary proceeding.

Furthermore, even if a plan had not yet been confirmed, lienstripping under Chapter 13 should only be achieved in the context of a plan and not an adversary proceeding, because satisfaction of a secured claim through lienstripping should not be permitted to survive dismissal or conversion of a Chapter 13 case.

In the event of the dismissal of a Chapter 13 case, any lien voided is deemed revived. *See* 11 U.S.C. § 349(b)(1)(C).[7] The same should be true if the case is converted to Chapter 7. Pursuant to § 1307(a), "[t]he debtor may convert a case under this chapter to a case under Chapter 7 of this title at any time. Any waiver of the right to convert under this subsection is unenforceable." 11 U.S.C. § 1307(a). Prior to *Dewsnup*, the weight of authority held that the satisfaction of an allowed secured claim in a Chapter 13 case survived the conversion of that case to Chapter 7. *See In re Hargis,* 103 B.R. 912, 915–17 (Bankr.E.D.Tenn.1989); *In re Estep,* 96 B.R. 87, 89–90 (Bankr.E.D.Ky.1988); *In re Tunget,* 96 B.R. 89, 89 (Bankr.W.D.Ky. 1988). *See also In re Bunn,* 128 B.R. 281, 284 (Bankr.D.Idaho 1991); *In re Tluscik,* 122 B.R. 728, 729–30 (Bankr.W.D.Mo.1991). Since the *Dewsnup* decision, courts have split on the survival of lienstripping after conversion. *See In re Pickett,* 151 B.R. 471 (Bankr. M.D.Tenn.1992) (secured creditor's allowed claim was not revived upon conversion to Chapter 7); *In re Murry–Hudson,* 147 B.R. 960, 962–64 (Bankr.N.D.Cal.1992) (Chapter 13 debtor may hold property free and clear of liens after paying the secured portion of bifurcated lien). *But see In re Gammon,* 155 B.R. 15, 17–18 (W.D.Okla.1993) (debtor may not redeem collateral in Chapter 7 by payment on lien stripped down in Chapter 13 proceeding); *In re Jordan,* 164 B.R. 89, 90–92 (Bankr.E.D.Mo.1994) (debtor not entitled to release of automobile lien upon conversion to Chapter 7).

■ This Court supports the reasoning of those courts which have precluded the survival of lienstripping after conversion to Chapter 7. Firstly, such survival is totally inconsistent with the teachings of *Dewsnup. Dewsnup* may have been limited, but if it stands for anything, it stands for the proposition that lienstripping in Chapter 7 case is prohibited. Section 348(a)[8] provides for the effect of conversion from one Chapter to another. The effect of § 348(a) is that the debtor is deemed to have filed the Chapter 7 case at the time the Chapter 13 case was filed. *See In re Jordan,* 164 B.R. at 90–91. Therefore, if lienstripping were to survive conversion to Chapter 7, § 348 would effect lienstripping in a case deemed originally filed under Chapter 7, in violation of *Dewsnup.* Secondly, allowing lienstripping to survive conversion, would allow Chapter 13 debtors to preserve lienstripping when cases are converted, but not when they are dismissed. *See* 11 U.S.C. § 349(b)(1)(C). There does not seem to be any justification for such a distinction.

■ Assuming then that lienstripping should not be deemed to survive dismissal or conversion to Chapter 7, it seems clear that lienstripping in Chapter 13 cases should not be determined in adversary proceedings where judgments ordinarily survive conversion from Chapter to Chapter. *See* 11 U.S.C. § 348(a). Rather, lienstripping should only be accomplished through the Plan itself, which does not provide a benefit to the Debtor *until* the Debtor obtains a discharge under 11 U.S.C. § 1328, and it is certain that the case will be neither dismissed nor converted.

---

7. Section 349(b)(1)(C) provides:

(b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—
  (1) reinstates—
  (c) any lien voided under Section 506(d) of this title.
11 U.S.C. § 349(b)(1)(C).

8. Section 348(a) provides:

(a) Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.
11 U.S.C. § 348(a).

## III. CONCLUSION

For the reasons set forth above, the Debtor's Complaint should be dismissed on the pleadings. A separate Judgment will issue accordingly.