In re Thomas and Jodie BRADSHAW,
Debtors.

No. 00–42999–JBR.

United States Bankruptcy Court,
D. Massachusetts.

Oct. 22, 2002.

Lawrence P. Cohen, Boston, MA, Louise R. Forbes, Special Assistant United States Attorney, Boston, MA, for creditor.

William F. Markley, Law Offices of William F. Markley, Quincy, MA, for debtors.

David T. Mazzuchelli, Counsel to the Commissioner, MA Dept. of Revenue, Litigation Bureau, Boston, MA, for creditor.

**MEMORANDUM OF DECISION ON (1) DEBTORS' MOTION TO DETERMINE SECURED STATUS PURSUANT TO 11 U.S.C. SECTION 506(a); (2) DEBTORS' OBJECTION TO PROOF OF CLAIM FILED BY THE COMMONWEALTH OF MASSACHUSETTS DEPARTMENT OF REVENUE; AND (3)DEBTORS' OBJECTION TO PROOF OF CLAIM FILED BY THE INTERNAL REVENUE SERVICE**

JOEL B. ROSENTHAL, Bankruptcy Judge.

This matter came before the Court for hearing on three separate but related pleadings filed by the Debtors: (1) Motion to Determine Secured Status Pursuant to 11 U.S.C. Section 506(a); (2) Objection to Proof of Claim Filed by the Common-

wealth of Massachusetts Department of Revenue ("DOR"); and (3) Objection to Proof of Claim Filed by the Internal Revenue Service ("IRS"). These pleadings are the latest in a series of the Debtors' unsuccessful attempts to avoid the tax liens of the IRS and the DOR. For the reasons set forth herein the Court lacks jurisdiction to act on the Motion to Determine the Secured Status and the Objections to the Proofs of Claim of the IRS and the DOR until final resolution of the Debtors' pending appeal.

## BACKGROUND

The Debtors filed for relief pursuant to Chapter 13 of the United States Bankruptcy Code on May 26, 2000. On June 9, 2000 they filed their schedules in which they listed the value of their primary residence as $85,000. Schedule D indicates that the residence was encumbered by a first mortgage in the amount of $72,600, tax liens of the IRS in the amount of $67,031.82, and the DOR in the amount of $5,000. Schedule A bears the notation that these tax liens are "to be avoided." Schedule B lists $6,020.00 of personal property including two cars, some jewelry and tools, aggregating to $2,700. Schedule B describes the cars, jewelry, and tools as encumbered by a lien in favor of the IRS in the amount of $67,031.82 and each is followed by an identical notation: "Lien to be avoided".

On June 9, 2000 the Debtors also filed their Chapter 13 Plan which provided for the treatment of the secured claims as follows:

A) CLAIMS TO BE PAID THROUGH THE PLAN (INCLUDING ARREARS):

| Creditor | Description of claim | Amount of Claim |
| --- | --- | --- |
| Plymouth Mortgage Co. | Pre-petition arrears | $ 3440.00 |
| Internal Revenue Service | Tax Lien-to be avoided | $67031.82 |
| Mass DOR | Tax Lien-to be avoided | $ 5000.00 |

Total amount of secured claims to be paid though the Plan $75471.82 The Plan was confirmed on August 24, 2000. Subsequently both the IRS and the DOR filed proofs of claim. In its proof of claim the IRS asserted a secured claim of $71,088.75; a priority unsecured claim of $9,356.79; and general unsecured claim of $751.66. The DOR's proof of claim states that the DOR holds a secured claim in the amount of $18,326.32; an unsecured priority claim in the amount of $624.29; and a general unsecured claim in the amount of $917.87. The tax liens arise statutorily and both liens are against the Debtors' real and personal property.[1] There is no challenge to the perfection of these liens.

The Debtors took no action to avoid the liens or otherwise object to the tax claims. Consequently in February 2002, more than a year and a half after the Debtors filed their Plan, the Chapter 13 Trustee moved to dismiss because the Plan, as confirmed, was no longer feasible in light of the Debtors' failure to successfully challenge the tax claims.[2] On March 19, 2002 the Debtors responded by filing a motion to avoid the tax liens on the grounds that the liens had been avoided under the Plan and thus

1. Although the Debtors' Schedules do not reflect the DOR lien against their personalty, M.G.L. ch. 62C, § 50 expressly states that the DOR's statutory lien encumbers "all property and rights to property, whether real or personal...."

2. The Chapter 13 Trustee also moved for dismissal because the Debtors missed one Plan payment.

the doctrine of *res judicata* barred the IRS and the DOR from asserting their liens. Both taxing authorities objected and on April 18, 2002 this Court entered an order denying the motion because the Plan did not unambiguously, clearly, and unequivocally put the IRS or the DOR on notice that their rights were being affected by the Plan.

The Debtors then faxed a motion seeking an extension of time until May 6, 2002 in which to file a motion for reconsideration or a notice of appeal. The Court granted the extension and on May 6, 2002 the Debtors filed a Motion for Reconsideration (the "First Reconsideration Motion"). For the first time they asserted that no party objected to the property values listed in the Schedules and therefore, pursuant to Section 506(a) of the Bankruptcy Code, the IRS is undersecured and the DOR is wholly unsecured.[3] On May 13, 2002 they further supplemented their request for reconsideration in their Supplemental Motion for Reconsideration (the "Second Reconsideration Motion"). The Second Reconsideration Motion is identical to the First except for the addition of one paragraph in which the Debtors set forth their scheduled valuation of their residence, and the amount of the encumbrances on that property. In essence they show the mathematical calculations by which they arrive at their conclusion that the IRS holds a secured claim of $9,087.68 while the DOR's claim is unsecured.[4] This Court denied the Reconsideration Motions

on May 20, 2002. The Debtors next filed notices of appeal from the orders of April 18 and May 20 and a motion for leave to appeal. The Bankruptcy Appellate Panel held that the two orders were final and thus denied the motion for leave to appeal as moot. The Panel then dismissed the appeal of the April 18 order because the facsimile transmission was received by the Bankruptcy Clerk's office after 4:30 p.m. on April 28 and under M.L.B.R. 5001–2(b), it was deemed filed on April 29. It was, therefore, untimely and the BAP lacked jurisdiction to hear the appeal of the April 18 order. The BAP, however, noted that the appeal from the May 20 order denying reconsideration was timely and could "proceed as a discrete question, unconnected to the order of April 18, 2002." *Bradshaw v. United States of America (In re Bradshaw),* 283 B.R. 814, 818–19 (1st Cir. BAP 2002).

Apparently unsatisfied with the status of the remaining appeal, on September 16, 2002 the Debtors came back to this Court and filed their Motion to Determine Secured Status Pursuant to 11 U.S.C. Section 506(a) (the "Motion to Determine Secured Status"). This Motion is identical in substance to the Second Reconsideration Motion except the Debtors' valuation of the IRS's secured claim has been adjusted upward to $26,362.50 apparently as a result of the addition of the value of the personalty, an unexplained $10,000 increase to the value of the real estate, and an unex-

---

**3.** The DOR alleges that it was the first to assess the Debtors tax liabilities. If the DOR is correct, then the Debtors have incorrectly prioritized the taxing liens based on a "first to record" rule. Priorities between the IRS and the DOR follow the "cardinal rule" first articulated by the Supreme Court in *Rankin & Schatzell v. Scott,* 12 Wheat. (25 U.S.) 177, 179, 6 L.Ed 592 (1827). That rule, namely that a "prior lien gives a prior claim", in this case requires an examination of whether the

DOR's lien was " 'choate' enough to prime a later and equally general federal tax lien." *United States v. State of Vermont,* 377 U.S. 351, 354, 84 S.Ct. 1267, 1269, 12 L.Ed.2d 370 (1964) (citation omitted). Generally the answer is that the DOR's is sufficiently choate and thus a "first to assess" rule governs.

**4.** The Debtors did not include the value of any personalty in their calculations.

plained decrease in the amount of the mortgage.[5] On October 3, 2002 the Debtors followed the Motion to Determine Secured Status with objections to the IRS's and the DOR's claims. The objections do nothing more than reiterate the substance of the Motion to Determine Secured Status. Only the DOR filed an opposition to the Motion to Determine Secured Status. In its opposition the DOR challenges the procedure by which the Debtors seek a determination of the validity of the tax liens, the valuation of the real estate and the outstanding amount of the mortgage, and the Debtors' right to bifurcate and cram down the tax claims under *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

## DISCUSSION

■ Although no party has raised the issue of this Court's jurisdiction to hear the Motion to Determine Secured Status, it is the Court's responsibility to do so. Given that the Debtors have an appeal currently pending before the BAP, the Court must examine the propriety of ruling on a motion, and indeed the objections, that raise as their only argument one which is identical to the argument set forth in the Reconsideration Motions currently on appeal.

■ "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982) (per curiam). "The rule is well established that the taking of an appeal transfers jurisdiction from the Bankruptcy Court to the

Appellate Court with regard to matters involved in the appeal and divest the Bankruptcy Court of jurisdiction to proceed further with such matters." *In re Kendrick Equipment Corporation,* 60 B.R. 356, 358 (Bankr.W.D.Va.1986) (citations omitted). "This is so because a bankruptcy judge does not have concurrent jurisdiction with the district court [or BAP] over the subject matter of an appeal. . . . Once a notice of appeal is filed 'no lower court should be able to vacate or even modify an order under appeal, not even a bankruptcy court attempting to eliminate the need for a particular appeal.' . . . The rationale for this rule is the avoidance of confusion and waste of time that might result from putting the same issues before two courts at the same time." *In re Emergency Beacon Corporation,* 58 .B.R. 399, 402 (Bankr. S.D.N.Y.1986). The question thus becomes whether the pending appeal of the May 20 order denying reconsideration has put before the BAP the same matters which the Debtors now ask this Court to address.

■ Motions for reconsideration are not recognized under the Federal Rules of Bankruptcy Procedure or under the Federal rules of Civil Procedure. *In re Good,* 281 B.R. 689, 698 (10th Cir. BAP 2002). The term is a misnomer and is used as a form of shorthand to refer to a variety of motions pursuant to Fed.R.Civ.P. 59, made applicable to bankruptcy cases by Fed. R. Bankr.P. 9023,or Fed.R.Civ.P. 60, made applicable to bankruptcy cases by Fed. R. Bankr.P. 9024. In general "the purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.

---

**5.** The Debtors state that all of these values are as of the petition date. The value of the residence and the amount of the mortgage,

differ from the amounts listed in the Debtors' Schedules and the Second Reconsideration Motion.

1985), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986) (citations omitted). This Court ruled in its May 20 order denying the Debtors' Reconsideration Motions that the Debtors failed to meet this standard with the assertion of a new legal argument seeking to limit the amount of the IRS's and the DOR's liens pursuant to Section 506(a). Because the Court found that the Debtors failed to meet the test for reconsideration, it did not rule on the merits of their new argument. But it does not necessarily follow that the BAP's review will be limited to the narrow question of whether this Court abused its discretion in denying the Reconsideration Motions without any examination of the Section 506(a) argument. For example, it is possible that if the BAP reverses the denial of the Reconsideration Motions, it could remand with instructions as to how this Court should resolve the myriad of issues raised by the Debtors' Section 506(a) argument.[6] Therefore this Court concludes that the matters now before it are the same as the matter before the BAP and thus this Court lacks jurisdiction to rule on them. Moreover, even if the appeal did not divest this Court of jurisdiction to hear the Motion to Determine Secured Status, a premature ruling by this Court has the potential to lead to a decision potentially at odds with the decision of the BAP. The result is no different with the claims objections; each objection emanates from the Debtors' Section 506(a) argument.[7]

## CONCLUSION

This Court lacks jurisdiction to rule on the Motion to Determine Secured Status and the objections. A separate order will issue.

---

6. The issues raised are numerous. For example, the DOR has asserted that the attack on the amount of the secured tax claims is procedurally defective as such a determination can only be made in the context of an adversary proceeding. *See* Fed. R. Bankr.P. 7001(2). Judge Boroff, in *McDonough v. Plaistow Cooperative Bank (In re McDonough),* 166 B.R. 9, 14 (Bankr.D.Mass.1994), however, addressed the issue of lienstripping in a Chapter 13 case and determined that it is not intended to survive if the case is subsequently converted to a Chapter 7 proceeding. Consequently he held that "lienstripping should only be accomplished through the Plan itself, which does not provide a benefit to the Debtor *until* the Debtor obtains a discharge under 11 U.S.C. § 1328, and it is certain that the case will be neither dismissed or converted." *Id.* *But see Wright v. Commercial Credit Corporation,* 178 B.R. 703, 705 (E.D.Va.1995), appeal dismissed *In re Wright,* 77 F.3d 472 (4th Cir. 1996) (table decision). The DOR also notes the inconsistencies in the Debtors' valuations, including their December 2000 opposition to a motion for relief in which they acknowledged that the value of their residence was $125,000, and argues that the property should be valued as of the effective date of the Plan, not the petition date.

This Court also notes a more fundamental issue raised by the Debtors' request, namely, whether lienstripping of tax claims is permissible in this case, and if so at what point in the case such stripping is permissible. *See generally McDonough,* 166 B.R. at 11–13, *see also In re Thompson,* 224 B.R. 360 (Bankr. N.D.Tex.1998). Moreover, the Debtors assume that if they are successful in stripping the liens, then the unsecured portion give rise to only general unsecured claims. This may not be true; some portion of the tax liabilities may become priority unsecured claims which would need to be dealt with in any plan.

7. The Court also notes that the objections were filed well after the deadline for such objections had passed. MLBR 13–13(b). Contrary to the Debtors' argument that their delay was occasioned solely because the Court only recently undercut the *res judicata* effect of the confirmation order in the April 18 order, the Debtors' own draftmenship lead to their current predicament.