In re WONDER CORPORATION OF AMERICA, Debtor.

WONDER CORPORATION OF AMERICA and Waldco, Inc., Plaintiffs,

v.

CHASE MANHATTAN BANK, N.A. and Robinson & Cole, Defendants/Counterclaimants,

v.

WONDER CORPORATION OF AMERICA, Waldco, Inc., Pullman, Comley, Bradley & Reeves and Lane & Mittendorf, Counterdefendants.

Bankruptcy No. 5–86–00436.
Adv. No. 5–88–0070.

United States Bankruptcy Court, D. Connecticut.

Dec. 27, 1989.

Douglas A. Strauss, David A. Greenberg, Pullman, Comley, Bradley & Reeves, Bridgeport, Conn., for Wonder Corp. of America, plaintiff/counterdefendant.

Christopher R. Belmonte, Lane & Mittendorf, New York City, for Waldco, Inc., plaintiff/counterdefendant.

Edward F. Hennessey, Robert A. Izard, Jr., Robinson & Cole, Hartford, Conn., for Chase Manhattan Bank, N.A., defendant/counterclaimant.

## MEMORANDUM AND DECISION ON SANCTIONS UNDER 28 U.S.C. § 1927 AND BANKRUPTCY RULE 9011

ALAN H.W. SHIFF, Bankruptcy Judge.

It is hoped that this core proceeding[1] is the last of a series of unproductive battles waged by the attorneys on both sides in what has been an unnecessarily prolonged and too often vitriolic war.[2] Wonder Corporation of America ("Wonder") and Waldco, Inc., the joint proponents of a confirmed chapter 11 plan, seek sanctions pursuant to 28 U.S.C. § 1927 and Bankruptcy Rule 9011 against Chase Manhattan Bank, N.A. ("Chase") and Robinson & Cole ("R & C"), its attorneys. Chase counterclaims under Rule 9011 for sanctions in an unspecified amount against the plaintiffs and their at-

---

1. 28 U.S.C. § 157(b) provides:
 (2) Core proceedings include, but are not limited to—
 (A) matters concerning the administration of the estate....
 ....
 (3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11.

2. See In re Wonder Corp. of America, 96 B.R. 423 (Bankr.D.Conn.1989) (attorney's fees under § 506(b)); In re Wonder Corp. of America, 81 B.R. 221 (Bankr.D.Conn.1988) (jurisdiction after appeal); In re Wonder Corp. of America, 72 B.R. 580 (Bankr.D.Conn.1987), aff'd, 82 B.R. 186 (D.Conn.1988) (attorney's fees under § 506(b)); In re Wonder Corp. of America, 70 B.R. 1018 (Bankr.D.Conn.1987) (standing to object to confirmation).

torneys, Pullman, Comley, Bradley & Reeves ("P, C, B & R") and Lane & Mittendorf ("L & M"),[3] for prosecuting this action and related motions.[4]

## BACKGROUND

On June 23, 1986, Wonder filed a petition under chapter 7 of the Bankruptcy Code. On September 18, 1986, the case was converted to chapter 11. The genesis of this controversy is the overzealous opposition by R & C[5] to Wonder's reorganization efforts.

On April 28, 1987, I noted in ruling on Chase's § 506(b) application for attorneys' fees and costs that

> there was never any appreciable risk at any time that ... [Chase] would not be paid in full in accordance with applicable bankruptcy law.
>
> ....
>
> [Although] creditors are entitled to engage counsel and pay for constant, comprehensive, and aggressive representation, ... where services are not reasonably necessary or where action is taken because of an attorney's excessive caution or overzealous advocacy, courts have the right and the duty, in the exercise of their discretion, to disallow fees and costs under § 506(b). Indeed such activity might cross the line of conduct sanctionable under F.R.Civ.P. 11 and Bankr.R. 9011 if it is "interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."

*In re Wonder Corp. of America*, 72 B.R. 580, 590–91 (Bankr.D.Conn.1987), *aff'd*, 82

B.R. 186 (D.Conn.1988) (the "Fee Order").[6] I disallowed 515 of the 1,290 hours sought by Chase "as blatant and totally unproductive obstruction in the administration of this case.... None of ... [the] activities [attributable to those hours] served any legitimate purpose." *Id.* at 592. I then determined that "[a] large number of the remaining ... [775] hours not only have strong overtones of unnecessary services but are also tainted by excessive duplication, both of which have resulted in grossly inflated fees." *Id.* at 593. Accordingly, I discounted those hours by a factor of 66⅔%, which resulted in the allowance of 258 compensable hours under § 506(b).

On July 9, 1987, the plaintiffs moved for the imposition of sanctions against Chase and R & C under 28 U.S.C. § 1927 and Bankruptcy Rule 9011. On October 8, 1987, they filed an amended motion. On November 3, 1987, Chase moved to dismiss the plaintiffs' amended motion, asserting that, in light of its pending appeal from the Fee Order, this court lacked jurisdiction over some matters, the interests of judicial economy dictated that other matters be referred to the district court, and that only the district court could exercise jurisdiction over Chase's appellate conduct. I granted the motion in part but decided that those matters over which this court retained jurisdiction should be retained here. *In re Wonder Corp. of America*, 81 B.R. 221, 226–27 (Bankr.D.Conn.1988). On February 5, 1988, the district court affirmed the Fee Order, finding

> that substantial evidence exists on the record to support the conclusion that a

---

**3.** *See* Rule 13(a), (h) Fed.R.Civ.P.; Bankruptcy Rule 7013; Rule 20(a) Fed.R.Civ.P.; Bankruptcy Rule 7020.

**4.** With the exception of the testimony of Andrew I. Ryan, a Chase workout officer, offered by the defendants, the parties agreed to present their positions by the presentation of an Outline of Position with attached exhibits. Accordingly, this decision is based upon pleadings, consisting of a complaint filed on June 1, 1988, an answer and counterclaim filed on June 28, 1988, and a reply to counterclaims filed on July 5, 1988; the testimony of Andrew Ryan; the party's outlines and attached exhibits; and the memoranda and arguments of counsel.

**5.** *See supra* note 13.

**6.** Bankruptcy Code § 506(b) provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

large portion of Chase's claim reflected unreasonably excessive duplication and a determined effort to frustrate the bankruptcy proceedings. The decision to disallow a significant portion of Chase's claim, therefore, was quite appropriate under the circumstances. *In re Wonder Corp. of America*, 82 B.R. 186, 192 (D.Conn.1988). On June 1, 1988, the plaintiffs commenced the instant adversary proceeding.

## A.

### Complaint

The complaint identifies the following eight categories of conduct allegedly sanctionable under 28 U.S.C. § 1927 and/or Bankruptcy Rule 9011 [7] for which the plaintiffs seek sanctions aggregating $199,893.50 for 1,486.1 hours spent responding to that conduct: [8]

#### (1) *Cash Collateral and Borrowing.*

On October 2, 1986, Wonder filed its first motion to use cash collateral. *Plaintiffs' Outline*, Exhibit F. The plaintiffs allege that the motion was initially opposed by Chase at the hearings which commenced on October 10, *Complaint* ¶ 20; *Plaintiffs' Outline* at 8,[9] but that the parties thereafter agreed that Wonder could use a portion of the cash collateral and borrow other funds from Waldco. They also agreed that a portion of the cash collateral would be paid to Chase and another bank. *Plaintiffs' Outline*, Exhibit H.

On December 2, 1986, Chase filed an objection to Wonder's further use of cash collateral. *Plaintiffs' Outline*, Exhibit D. On December 10, Wonder filed a second motion for authority to use cash collateral. *Plaintiffs' Outline*, Exhibit I. On December 19, Wonder filed a motion for authorization to borrow funds from Waldco, *Plaintiffs' Outline*, Exhibit J, to which Chase objected at the hearing held on that date. *Plaintiffs' Outline*, Transcript of Dec. 12, 1986. At a December 20 hearing, Wonder was authorized to borrow $120,000 from Waldco. *Defendants' Outline*, Exhibit 2.

On January 7, 1987, Wonder filed a renewed second motion for authority to use

---

7. For the text of Bankruptcy Rule 9011 and 28 U.S.C. § 1927, *see infra* at 27, 29–30.

8. The sanctions sought are attributable to fees paid by Wonder to Zeisler & Zeisler (Z & Z), Wonder's original attorneys, and to Martin W. Hoffman (M.W.H.), the attorney for the unsecured creditors' committee, under the Fee Order; by Wonder to P, C, B & R under the Fee Order and another order; and by Waldco to L & M:

| Category | Z & Z | M.W.H. | P, C, B & R | L & M |
|---|---|---|---|---|
| 1. | $19,791.50 | $8,242.50 | $14,386.00 | $6,531.25 |
| | (127.4 hrs.) | (54.95 hrs.) | (112.1 hrs.) | (37.25 hrs.) |
| 2. | 0.00 | 800.00 | 108.00 | 276.25 |
| | 0.00 | (1.2 hrs.) | (.6 hrs.) | (3.25 hrs.) |
| 3. | 726.00 | 300.00 | 2,200.00 | 3,967.50 |
| | (4.4 hrs.) | (2.0 hrs.) | (14.0 hrs.) | (34.5 hrs.) |
| 4. | 0.00 | 7,575.00 | 12,872.00 | 17,052.50 |
| | 0.00 | (50.5 hrs.) | (92.4 hrs.) | (113.5 hrs.) |
| 5. | 0.00 | 0.00 | 2,998.00 | 3,813.75 |
| | 0.00 | 0.00 | (25.9 hrs.) | (30.25 hrs.) |
| 6. | 0.00 | 0.00 | 6,718.00 | 12,835.00 |
| | 0.00 | 0.00 | (45.1 hrs.) | (101.5 hrs.) |
| 7. | 0.00 | 0.00 | 2,956.00 | 1,780.00 |
| | 0.00 | 0.00 | (21.3 hrs.) | (10.0 hrs.) |
| 8. | 0.00 | 0.00 | 20,157.50 | 53,806.75 |
| | 0.00 | 0.00 | (150.0 hrs.) | (454.0 hrs.) |
| Totals | $20,517.50 | $16,917.50 | $62,395.50 | $100,063.00 |
| | (131.8 hrs.) | (108.65 hrs.) | (461.4 hrs.) | (784.25 hrs.) |

9. While another bank and Wonder's former trustee, Attorney Richard Belford, filed objections to the motion, Chase did not.

cash collateral. *Plaintiffs' Outline*, Exhibit K. On February 4, 1987, Chase and another bank filed a memorandum of law in opposition to that motion. *Plaintiffs' Outline*, Exhibit E. On February 9, 1987, an agreement was reached under which Wonder was allowed to use $150,000 of cash collateral and borrow $150,000 from Waldco. *Plaintiffs' Outline*, Exhibit P.

The plaintiffs claim that as a consequence of Chase's opposition to their attempts to use cash collateral and borrow money, they incurred attorneys' fees of $48,951.25 for 331.7 hours. *Plaintiffs' Outline* at 15–17.

(2) *Motion for Appointment of Trustee or Examiner.*

On January 8, 1987, Chase filed, but did not pursue, a motion for the appointment of a trustee or, in the alternative, an examiner, alleging improprieties in the relationship between Waldco and Wonder and the commission of fraudulent acts by Wonder's management. *Plaintiff's Outline*, Exhibit Q. The plaintiffs claim that they incurred $1,184.25 in attorneys' fees for 5.05 hours spent opposing the motion. *Plaintiffs' Outline* at 17–18.

(3) *Opposition to Motions to Substitute Attorneys for Debtor and to Admit Attorney for Waldco Pro Hac Vice.*

On January 6, 1987, a motion for the admission *pro hac vice* of Attorney Christopher Belmonte, of L & M, to represent Waldco was filed and granted over Chase's objection. On January 9, 1987, a motion was filed for permission to substitute P, C, B & R for Zeisler & Zeisler as attorneys for Wonder. Chase objected on the ground that P, C, B & R's fee was guaranteed by Waldco, which was, *inter alia*, an equity security holder, *Plaintiffs' Outline*, Transcript of Jan. 22, 1987, an undersecured creditor,[10] and a potential purchaser of Wonder. The motion was granted on January 22, 1987. The plaintiffs contend that Chase's opposition and its cross-examina-

tion of Attorney Douglas A. Strauss, of P, C, B & R, regarding his firm's relationship with Waldco was unreasonable and that as a result of that opposition they incurred attorneys' fees of $7,193.50 for 54.9 hours. *Plaintiffs' Outline* at 19–21.

(4) *Impairment/Objections to Disclosure Statement and Plan.*

On February 3, 1987, the plaintiffs filed a disclosure statement and plan of reorganization. *Plaintiffs' Outline*, Exhibits L and M. On February 18, they filed an amended disclosure statement and plan, *Plaintiffs' Outline*, Exhibits S and T, and on February 25 they further amended their disclosure statement and plan. The disclosure statements and plans provided, *inter alia*, that Chase would be paid in cash the full amount of its allowed claim on the effective date of the confirmed plan. On March 3, 1987, Chase and two other banks filed an objection to confirmation on a number of grounds, including their designation as unimpaired. *Plaintiffs' Outline*, Exhibit V. *See* 11 U.S.C. § 1124. A memorandum of law in support of their objection was filed on March 9. On March 18, the first date of the confirmation hearing, I ruled that Chase was unimpaired and therefore lacked standing to object to confirmation of the plan. *In re Wonder Corp. of America*, 70 B.R. 1018, 1022–24 (Bankr.D. Conn.1987). On March 20, notwithstanding that ruling, Chase filed a supplemental objection to the plan. *Plaintiffs' Outline*, Exhibit Y. The plan was confirmed at the hearing on March 20, and an order entered to that effect on April 7, 1987. The plaintiffs claim that as a result of Chase's opposition they incurred attorneys' fees of $37,499.50 for 256.4 hours. *Plaintiffs' Outline* at 22, 35.

(5) *Subpoenas.*

On February 25, 1987, the date that Wonder's disclosure statement was approved, Chase filed notices of the depositions of eight individuals, which were scheduled for

---

**10.** Waldco had a conditional agreement for the purchase of an undersecured claim against the debtor. *Plaintiffs' Outline*, Transcript of January 22, 1987. " '[C]laim' means … right to payment, whether or not such right is … contingent…." 11 U.S.C. § 101(4)(A).

March 10, 11, 12 and 13. *Plaintiffs' Outline*, Exhibit Z. On February 27, eight subpoenas, signed by the Clerk but not by Chase's attorneys, were issued by this court. *Plaintiffs' Outline*, Exhibit AA. At the March 9, 1987 hearing on the plaintiffs' motion to quash, Chase argued that it needed information on the feasibility of the proposed plan; the good faith of the plan proponents; the definition of "Final Order", *i.e.*, whether it would preserve its lien until its allowed claim was paid in full; the issue of the impairment of its claim; and the alleged commission of various acts of fraud by the proponents. *Plaintiffs' Outline*, Transcript of Mar. 9, 1987. The motion to quash was granted. The plaintiffs claim that they incurred attorneys' fees of $6,811.75 for 56.15 hours spent opposing the depositions. *Plaintiffs' Outline* at 37–38, 41.

### (6) *Chase's Fee Application.*

On March 4, 1987, an *ex parte* scheduling order entered fixing March 20, 1987 as the last date for filing applications for fees and costs under § 506(b). On March 11, Chase and two other banks filed notices of appeal from that order. On March 20, 1987, Chase submitted an application and supporting statement under § 506(b) for reimbursement of $197,437.94 for attorneys' fees and disbursements. *Plaintiffs' Outline*, Exhibits CC and DD.

The plaintiffs contend that R & C knew that Chase was not entitled to recover the fees which were subsequently disallowed by the Fee Order and that they incurred attorneys' fees of $19,553.00, representing 101.5 hours by L & M and 45.1 hours by P, C, B & R, opposing the fee application. *Plaintiffs' Outline* at 43–45.

### (7) *Post–Confirmation Conduct.*

On April 28, 1987, the plaintiffs moved to modify their confirmed plan to permit the transfer of Chase's collateral provided that Chase was paid the full amount of its allowed secured claim, including its § 506(b) fees approved by the Fee Order. Chase filed an objection on April 30, claiming that the proposed modified plan did not secure

any fees it would be entitled to if it prevailed on its appeal of the Fee Order. Thereafter, Wonder, Chase, and two other banks agreed to establish an escrow account in which sufficient funds were to be deposited to secure the § 506(b) fees disallowed by the Fee Order in the event the appeals succeeded. *Plaintiffs' Outline*, Exhibit EE. On August 3, 1987, after one of the other banks withdrew its appeal, Wonder moved to modify the escrow agreement. Chase objected, and the motion was denied on October 7, 1987. *Defendants' Outline*, Exhibit 16. Following the affirmance of the Fee Order, the plaintiffs requested the release of all escrow funds. Chase objected to the release of $20,000.00 on the basis that the money should be retained pending a decision on its supplemental application for fees and expenses. *See In re Wonder Corp. of America*, 96 B.R. 423 (Bankr.D.Conn.1989). The plaintiffs claim sanctions for attorneys' fees in the amount of $4,736.00 for 31.3 hours. *Plaintiffs' Outline* at 45–46, 48.

### (8) *Motion, Amended Motion, and Complaint for the Imposition of Sanctions.*

The plaintiffs argue that the defendants employed dilatory tactics in violation of § 1927, such as requiring the plaintiffs to make their motions and this complaint more specific, as a result of which they have incurred attorneys' fees of $73,964.25 for 604 hours. *Plaintiffs' Outline* at 49, 52.

### B.

### Counterclaim

Chase has filed a five count counterclaim, seeking a sanction in an unspecified amount under Rule 9011 against the plaintiffs and their attorneys, P, C, B & R and L & M:

*Count 1—July 9, 1987 Motion for Imposition of Sanctions;*

*Count 2—October 8, 1987 Amended Motion for Imposition of Sanctions:*

*Count 3—June 1, 1988 Complaint for Sanctions.*

The defendants contend that the plaintiffs' motions and this action for sanctions

were motivated by an attempt to coerce Chase into withdrawing its appeal of the Fee Order. *Defendants' Outline*, Exhibits 13 and 14. The defendants also argue that those pleadings lack specificity and improperly assert a claim against Chase under § 1927.

*Count 4—Continuing Violation of Rule 9011.*

The defendants claim that all activity by P, C, B & R and L & M subsequent to their initial motion for sanctions constitutes a continuation of that improper act and therefore a continuing violation of Rule 9011.

*Count 5—Motion to Amend Escrow.*

On August 3, 1987, after another bank moved for the voluntary dismissal of its appeal from the Fee Order, the plaintiffs filed a motion to amend the escrow agreement to release funds held to secure the claim of that bank. The motion was denied, and the defendants contend that the plaintiffs' motion is sanctionable under Rule 9011.

## DISCUSSION

The so-called "American Rule" provides that litigants pay their own attorneys in the absence of an exception or an enforceable contractual provision to the contrary. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975); *Oliveri v. Thompson*, 803 F.2d 1265, 1271 (2d Cir.1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). The pleadings in this adversary proceeding raise two exceptions to that rule.

### A.

#### Complaint

The plaintiffs' complaint is premised in large part on the claim that at the time R & C signed papers and otherwise acted improperly on Chase's behalf, R & C and

Chase knew that Chase was oversecured and, after the February 3, 1987 disclosure statement was filed, would be paid in cash the full amount of its allowed claim on the effective date of the plan. The plaintiffs attempt to buttress that claim by a reference to the conclusion in the Fee Order that some of the services performed by R & C constituted a "blatant and totally unproductive obstruction in the administration of this case" coupled with the statement in that order that "overzealous advocacy ... might cross the line of conduct sanctionable under F.R.Civ.P. 11 and Bankr. R. 9011 if [the legal services are] ... 'interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.'" *In re Wonder Corp. of America, supra*, 72 B.R. at 591–92.

In most of the categories, the plaintiffs' thesis fails to recognize that the standards for imposing sanctions under Rule 9011 and § 1927 are different from those in a § 506(b) analysis. It is one thing to disallow a fee for services which are unreasonable under § 506(b) and quite another to impose a sanction against an attorney for having performed those services. Moreover, the plaintiffs for the most part appear to have overlooked the fact that the burden is now upon them to prove that the acts complained of are sanctionable.

1.

### 28 U.S.C. § 1927

28 U.S.C. § 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The defendants challenge this court's authority to impose sanctions under § 1927.[11]

---

**11.** The defendants cite *United States v. Jenkins (Matter of Richardson)*, 52 B.R. 527, 531–38 (Bankr.W.D.Mo.1985) (bankruptcy court is not a court of the United States empowered to sanction under § 1927), and *Brown v. Mitchell (In re Arkansas Communities, Inc.)*, 827 F.2d 1219, 1221 (8th Cir.1987) (finding that it is questionable whether bankruptcy courts are courts of the United States empowered to impose sanctions under § 1927), as support for their argument

I need not consider that issue because of the conclusion that in any event the plaintiffs have failed to meet their burden of proving that R & C violated that section.

**a. § 1927 Sanctions against Chase.**

The plain language of § 1927 states that it is only applicable to the sanctionable conduct of attorneys, not their clients. The plaintiffs' attempt to include Chase within the purview § 1927 is therefore unavailing. *See Oliveri, supra,* 803 F.2d at 1273; *Burgos v. Murphy,* 692 F.Supp. 1571, 1577 (S.D.N.Y.1988).

**b. § 1927 Sanctions against R & C.**

To impose a sanction upon an attorney under § 1927, a clear showing of bad faith is required. *Oliveri, supra,* 803 F.2d at 1273; *Williams v. Amity Bank,* 703 F.Supp. 223, 228 (D.Conn.1988). In this circuit that means that the court must not only find clear evidence that an attorney's conduct was motivated by an improper purpose, such as harassment or delay, but also that it was "entirely without color". *See Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.,* 782 F.2d 329, 344 (2d Cir. 1986); *Sierra Club v. United States Army*

*Corps of Engineers,* 776 F.2d 383, 390 (2d Cir.1985), *cert. denied,* 475 U.S. 1084, 106 S.Ct. 1464, 89 L.Ed.2d 720 (1986) ("The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice."). A claim is meritless or " 'entirely without color' when it lacks *any* legal or factual basis." *Sierra Club, supra,* 776 F.2d at 390 (emphasis added). *See also Nemeroff v. Abelson,* 620 F.2d 339, 348 (2d Cir.1980). "[A] high degree of specificity in ... factual findings" is required in order to award sanctions on the basis of bad faith. *Weinberger v. Kendrick,* 698 F.2d 61, 80 (2d Cir.1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983). *See also Dow Chem., supra,* 782 F.2d at 344.

The plaintiffs' allegations and supporting material demonstrate that some of the legal services rendered by R & C were motivated by improper purposes, *see In re Wonder Corp. of America, supra,* 72 B.R. at 592, but, as recounted below, they have offered no basis for findings that any of the eight categories of acts they complain about were devoid of any legal or factual basis. That deficiency is fatal to their § 1927 claim.

that this court lacks jurisdiction to impose sanctions under § 1927. *See* 28 U.S.C. § 451.

The defendants claim that *Richardson* represents such well established law that the plaintiffs must be sanctioned under Rule 9011 for bringing a § 1927 action in this court, and that "had plaintiffs bothered to read the statute, or even attempted to research the issue, they would have become aware that they could not prevail under this section...." *Defendants' Memorandum,* September 28, 1988, at 51. However, had the defendants performed the research they accuse the plaintiffs of neglecting, they would have discovered that a majority of the appellate courts that have considered this issue have affirmed § 1927 sanctions imposed by bankruptcy courts after the 1984 amendment to § 451 of title 28 U.S.C. deleted bankruptcy courts from the list of courts of the United States. *See, e.g., In re TCI Ltd.,* 769 F.2d 441, 448 (7th Cir.1985); *Mortgage Mart, Inc. v. Rechnitzer (In re Chisum),* 68 B.R. 471, 473 (9th Cir. BAP 1986), *aff'd on other grounds,* 847 F.2d 597 (9th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988) (a bankruptcy court may render sanctions under 28 U.S.C. § 1927). *See also Matter of Emergency Beacon Corp.,* 52 B.R. 979, 996 (S.D.N.Y.1985), *aff'd. on other grounds,* 790 F.2d 285 (2d Cir.1986);

The defendants also fail to cite bankruptcy court decisions which demonstrate that bankruptcy courts have routinely imposed § 1927 sanctions after the 1984 Amendments. *See, e.g., Duvoisin v. Bucher (In re Southern Indus. Banking Corp.),* 91 B.R. 463, 465–66 (Bankr.E.D.Tenn. 1988); *Mauna Lani Resort, Inc. v. Endrex Inv., Inc. (In re Endrex Inv., Inc.),* 84 B.R. 207, 211–12 (Bankr.D.Colo.1988); *In re Chicago Midwest Donut, Inc.,* 82 B.R. 943, 951 (Bankr.N.D.Ill.1988); *Summerlin v. Outlaw (In re Outlaw),* 66 B.R. 413, 418–19 (Bankr.E.D.N.C.1986); *Interstate Steel Setters, Inc. v. A.J. Maggio Co. (In re Interstate Steel Setters, Inc.),* 65 B.R. 312, 315–17 (Bankr.N.D.Ill.1986); *Chaudhry v. Usoskin (In re Usoskin),* 61 B.R. 869, 873–74 (Bankr.E.D.N.Y. 1986); *Norwest Mortgage, Inc. v. Waters (In re Waters),* 60 B.R. 339, 343–44 (Bankr.E.D.Wis. 1986); *In re French Gardens, Ltd.,* 58 B.R. 959, 964–65 (Bankr.S.D.Tex.1986); *Trak Microcomputer Corp. v. Weltec Digital, Inc. (In re Trak Microcomputer Corp.),* 58 B.R. 708, 712–14 (Bankr.N.D.Ill.1986); *Norwood Fed. Sav. and Loan Ass'n v. Guiltinan (In re Guiltinan),* 58 B.R. 542, 545 (Bankr.S.D.Cal.1986); *In re Wright,* 54 B.R. 553, 555–56 (Bankr.E.D.Pa.1985).

■■ Under category 1, *supra* at 24–25, the plaintiffs claim that since Chase was at all times fully secured, the actions taken by R & C in opposition to Wonder's various attempts to use cash collateral and borrow had to have been in bad faith. I disagree. Even though I sharply reduced the amount of allowable fees for the services R & C rendered opposing Wonder's attempts to use cash collateral, it does not follow that their entire effort in that regard was devoid of any factual or legal basis. A secured creditor is entitled to assurance that its collateral is adequately protected during the period between the commencement of the case and the confirmation of a plan, and the burden is upon the debtor who wants to use the collateral to prove that it is. *See* 11 U.S.C. § 363(c)(1), (e).

It is not clear whether the plaintiffs allege a violation of § 1927 under category 2, which relates to the appointment of a trustee or examiner. *See supra* at 25. Assuming that they do, the plaintiffs have offered no supporting proof of bad faith. Even their *Outline* admits that Chase's "[m]otion [for appointment of trustee] had *minimal* chance of success on the merits...." (Emphasis added). Further, as discussed *infra*, the fact that Chase was oversecured has no relevance to their motion for the appointment of a trustee or examiner.

■ The plaintiffs have failed to present any evidence or make any specific argument under category 3 that R & C's opposition to the substitution of P, C, B & R for Zeisler & Zeisler was completely without color. *See supra* at 25. P, C, B & R's fee was guaranteed by Waldco, Inc., whose relationship to Wonder was not clear at the time of P, C, B & R's application. Bankruptcy Code § 327(a) provides that a debtor in possession may employ attorneys "that do not hold or represent an interest adverse to the estate, and that are disinterested persons" as defined by Code § 101(13). Whatever R & C's purpose in opposing the substitution of counsel may have been, the plaintiffs have failed to prove that R & C could not reasonably have concluded that facts might be established to show that P, C, B & R had an interest adverse to the estate in light of the guarantee of its fee by Waldco.

■ The plaintiffs have failed to prove that R & C's opposition to the admission of Attorney Belmonte *pro hac vice* caused the plaintiffs any delay or expense. The motion to admit him was granted on the same day it was filed, and R & C's opposition in open court to that motion was overcome within a matter of minutes. All of the hours charged by L & M were incurred *after* the *pro hac vice* motion was granted and had no relation to that motion. Thus, even if the plaintiffs had established the requisite bad faith, a sanction would not be appropriate.

■ The plaintiffs have failed to identify any act taken or paper filed by R & C in opposition to the confirmation of the proponents' plan that was devoid of merit. *See* category 4, *supra* at 25. I will not search the record to determine whether there may be a basis for their claim. The plaintiffs have likewise failed to support their claim under category 5, *supra* at 25–26, that R & C had no legal or factual basis for taking depositions in preparation for the confirmation hearing.

Categories 6, 7, and 8, *supra* at 26, merit even less discussion. There was never any suggestion that R & C did not provide the services for which they sought compensation. Their fee application therefore had a factual basis. Although Chase was not entitled to fees for the post-confirmation services rendered by R & C, *see In re Wonder Corp. of America, supra,* 96 B.R. 423, there is not a shred of evidence that those services were performed in bad faith. The allegation that R & C has used dilatory tactics in defending against this sanctions action is vague and unsupported by any specific evidence.

2.

Rule 9011

Bankruptcy Rule 9011(a) provides:

**Signature.** Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a

party represented by an attorney, ... shall be signed by at least one attorney of record in the attorney's individual name, whose office address and telephone number shall be stated.... The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

▆ Parenthetically it is observed that Rule 9011, which tracks Rule 11 Fed.R. Civ.P., is distinguishable from § 1927 in a number of ways. The former *mandates* a sanction against any signer of a document if it was not well grounded in fact *or* warranted by existing law *or* if it was intended for any improper purpose. A finding that any one of those elements is present will trigger the imposition of a mandatory sanction. In contrast, a finding that an act by an attorney was motivated by an improper purpose *and* devoid of any legal or factual basis might trigger a sanction under § 1927 at the discretion of the court.

The defendants make two preliminary arguments regarding the applicability of Rule 9011. First, Chase argues that the question of the propriety of their papers was subsumed within the hearing on the reasonableness of their fees, that the court could have but did not impose sanctions at that time, and that the "law of the case" doctrine precludes sanctions at this time. The same argument is advanced with respect to the opportunity of the district court to sanction under Rule 11 when that court decided the appeal from the Fee Order. *Answer and Counterclaim*, 5th, 6th and 7th Special Defenses, at 16–17; *Defendants' Outline* at 3. *See Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1982) (citing 1B *Moore's Federal Practice* ¶ 0.404, at 117 (2d ed. 1982)) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").

▆ While the law of the case doctrine applies to questions decided explicitly or by necessary implication, it does not apply to issues that might have been but were not decided in an earlier proceeding. *Marine Overseas Serv., Inc. v. Crossocean Shipping Co., Inc.*, 791 F.2d 1227, 1232 (5th Cir.1986); *Smith Int'l, Inc. v. Hughes Tool Co.*, 759 F.2d 1572, 1577 (5th Cir. 1985). The flaw in the defendants' argument is that the question of sanctions was not before or decided by either court.

▆ Second, the defendants note that the initial motion for sanctions was filed months after the acts complained of and argue that the plaintiffs' claims under 9011 are time barred. They rely on language in the Advisory Committee notes to Rule 11 that a party seeking sanctions should do so "promptly" or "shortly after" discovering a basis for doing so. Rule 11 Fed.R.Civ.P, Notes of Advisory Committee. The defendants' argument is unpersuasive. The Advisory Note on Rule 11 also suggests that a party should delay its request for the imposition of sanctions until the end of litigation, which, in the context of this case, means when the confirmation process was completed. To hold otherwise would have interfered with the efficient administration of the case and delayed the reorganization process.

a. Rule 9011 Sanctions against Chase.

▆ A party may not be sanctioned under Rule 9011 unless it had actual knowledge that its attorney signed a paper on its behalf for an improper purpose or that the

signed document had no basis in law or fact. The test is subjective. *Greenberg v. Hilton Int'l Co.,* 870 F.2d 926, 934 (2d Cir.1989).[12] As the court observed in *Calloway v. Marvel Entertainment Group,* 854 F.2d 1452, 1474–75 (2d Cir.1988):

> [T]he attorney, because of professional standards, is held to know of the wrongfulness of the conduct and, because of professional responsibility, should act to prevent it. Where the attorney fails to advise an unwary client of the wrongfulness of such conduct, the burden of sanctions should fall entirely upon the attorney.

 The unrefuted testimony of Andrew I. Ryan, a bank officer, was that Chase fully relied upon R & C to represent its interests and that Chase did not participate in any decision to sign and file any pleading or paper alleged by the plaintiffs to have violated Rule 9011.[13] It follows then that Chase should not be sanctioned under Rule 9011 for any improper filing by R & C.

### b. Rule 9011 Sanctions against R & C.

Rule 9011 is intended to "discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses." Fed.R.Civ.P. 11, Notes of Advisory Committee on Rules, 1983 Amendment. The rule places an affirmative duty on parties to conduct a reasonable inquiry into the validity of a motion before it is signed, and punishes "those who would manipulate the federal court system for ends inimicable to those for which it was created." *Eastway Const. Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). *See also Motown Prod., Inc. v. CACOMM, Inc. v. Motown Record Corp.,* 849 F.2d 781, 784 (2d Cir.1988).

 The rule creates an objective test, so that an attorney's subjective good faith does not provide a "safe harbor" from sanctions. *Calloway, supra,* 854 F.2d at 1469; *Motown Prod., Inc., supra,* 849 F.2d at 784; *Eastway Const. Corp., supra,* 762 F.2d at 253 (2d Cir.1985). The rule has been violated under the objective standard when

> a pleading has been interposed for any improper purpose, *or where,* after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

*Eastway Const. Corp., supra,* 762 F.2d at 254 (emphasis in original).

 In determining whether the rule has been violated, courts should avoid hindsight and resolve all doubts in favor of the signer of a pleading. *Calloway, supra,* 854 F.2d at 1469–70; *Eastway Const. Corp., supra,* 762 F.2d at 254. The signer's conduct is to be judged at the time the pleading or paper is signed, and Rule 9011 imposes no continuing obligation to withdraw or correct papers previously filed. *Calloway, supra,* 854 F.2d at 1470; *Oliveri, supra,* 803 F.2d at 1274–75. Where an attorney has an objectively reasonable basis to pursue a factual claim, sanctions may not be imposed under Rule 9011, *Calloway, supra,* 854 F.2d at 1470, but once it is found that the rule has been violated, the imposition of a sanction is mandatory. *Motown Prod., Inc., supra,* 849 F.2d at 785; *Eastway Const. Corp., supra,* 762 F.2d at 254 n. 7. A pleading or

---

**12.** Bankruptcy Rule 9011(a) tracks Rule 11 of the Federal Rules of Civil Procedure. Accordingly, decisions which construe Rule 11 are useful in analyzing Rule 9011(a). *See Featherston v. Goldman (In re D.C. Sullivan Co., Inc.),* 843 F.2d 596, 598 (1st Cir.1988) ("Rule 11 jurisprudence is largely transferable to Rule 9011 cases. . . .").

**13.** I recall that on several occasions a R & C attorney claimed that certain papers were signed and filed because of Chase's insistence that certain actions be taken. During oral argument in this matter a different R & C attorney insisted that Chase played no part whatsoever in any decision to file any of the papers upon which the plaintiffs base their claim for sanctions. The latter attorney's statement is corroborated by Ryan, and I accept that version as credible.

paper is to be judged as a whole, and sanctions are not permitted when only one of several arguments or allegations is frivolous or of a harassing nature. *See Murphy v. Business Cards of Tomorrow, Inc.,* 854 F.2d 1202, 1205 (9th Cir.1988); *Golden Eagle Distributing Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1540 (9th Cir.1986); *Two Star Surgical Supply, Inc. v. New York State Dep't of Social Serv. (In re Two Star Surgical Supply, Inc.),* 92 B.R. 26, 29 (E.D.N.Y.1988).

 A sanction under Rule 9011 may include an award of attorneys' fees and costs which were reasonably incurred as a result of the sanctionable conduct, but not the total costs of litigation. *Eastway Const. Corp. v. City of New York,* 637 F.Supp. 558, 571 (E.D.N.Y.1986), *modified and remanded,* 821 F.2d 121 (2d Cir.1987); *Weisman v. Rivlin,* 598 F.Supp. 724, 726 (D.D.C.1984) ("[T]he rule requires that the work expended be causally linked to the improperly filed paper . . . ."). The starting point in determining an appropriate sanction based upon the cost of attorneys' fees is the calculation of the time reasonably expended in responding to the improper signing which is then multiplied by a reasonable hourly rate. *Eastway Const. Corp., supra,* 637 F.Supp. at 571.

As noted, the plaintiffs have alleged eight categories of sanctionable conduct. The papers identified in category 1, *supra* at 24–25, with respect to cash collateral, were filed by Chase on December 2, 1986 and February 4, 1987, but approximately 120 of the 331.7 hours for which the plaintiffs seek sanctions were for legal services performed before those papers were filed.[14] The plaintiffs also seek compensation for approximately 25 hours they claim to have

spent responding to the defendants' objection to Wonder's December 19, 1986 motion to borrow,[15] but they fail to identify any paper filed by R & C in opposition to that motion. As to the remaining 186.7 hours, I conclude that the papers in question are not sanctionable.

 The plaintiffs' claim is that the papers signed and filed by R & C in opposition to Wonder's motions to use cash collateral were interposed for an improper purpose because Chase was oversecured, but, as noted *supra* at 29, the mere existence of an equity cushion does not necessarily provide a creditor with adequate protection. *See In re Epstein,* 26 B.R. 354, 357 (Bankr. E.D.Tenn.1982). A creditor should not be sanctioned under Rule 9011 for attempting to prevent the use of cash collateral prior to a finding that it is adequately protected. *See* § 363(e). It is noted that the attempted use of cash collateral and borrowing came before the February 3, 1987 disclosure statement and plan that treated Chase as unimpaired.[16]

 The plaintiffs seek sanctions against the defendants for filing a motion under § 1104 for the appointment of a trustee or examiner, asserting that since Chase was fully secured, the motion could not succeed. *See* category 2, *supra* at 25. Nothing in that section warrants a conclusion that a fully secured creditor may not seek the appointment of a trustee or examiner. The plaintiffs' suggestion that the motion would have been more appropriate had it been filed by the creditors' committee is irrelevant, even if valid.

 No paper was signed by R & C in relation to category 3 regarding the opposition to substitution of attorneys for Won-

---

**14.** These hours are computed as follows: 83.8 hours expended by Z & Z prior to the 12/2/86 objection by Chase; 10.8 hours by Attorney Hoffman prior to the 12/2/86 objection by Chase; 24.4 hours by P, C, B & R prior to the 2/4 memo of law by Chase.

The figure for the hours billed by the firm of Zeisler & Zeisler is my best approximation. The billing statement for that firm is cryptic at best.

**15.** These hours are computed as follows: 11.5 by Z & Z; 13.8 hours by Attorney Hoffman.

**16.** While Chase filed a memorandum in opposition to Wonder's January 7, 1987 cash collateral motion on February 4, 1987, the day after the disclosure statement was filed, it is clear from the memorandum that R & C was not aware of the contents of the disclosure statement at the time it filed the memorandum. *Plaintiffs' Outline,* Exhibit E, at 23.

der and admission of Attorney Belmonte *pro hac vice.* Rule 9011 is therefore not applicable.

▇▇ The Fee Order held that R & C's opposition to the plaintiffs' disclosure statements and plans, *see* category 4, *supra* at 25, amounted to blatant obstruction which served no legitimate purpose. *In re Wonder Corp. of America, supra,* 72 B.R. at 592. During oral argument in this action, R & C professed ignorance as to what its improper purpose could have been[17] despite the following language in the Fee Order:

> While [Chase's] attorneys contend that their efforts were aimed at getting their clients paid as soon as possible, their actions and the opposition they mounted clearly belie that goal. Evidence for that conclusion is found throughout this case, not the least of which is the continued resistance by [Chase] even after the Proponents' plan was unveiled and disclosed that [Chase was] to be paid the full amount of [its] allowed claims on its effective date. It is therefore not inappropriate for this court to ponder whether the asserted mistrust was not merely a guise for the real motive of [Chase's] counsel to manage, orchestrate, and control Wonder's reorganization, including the amount that would be allowed as fees under § 506(b).
>
> That perception is particularly compelling in view of a proposed pre-confirmation stipulation drafted by [Chase] for which [it] unsuccessfully sought court approval on March 3, 1987. Beyond the unacceptable interference with the court's authority to control its docket and the case management of contested matters, the stipulation supports the conclusion that [Chase] attempted to trade peace during the confirmation process for acquiescence by the [plaintiffs] not to dispute their request for the allowance of § 506(b) fees. This attempt went far beyond the level of negotiations appropriately aimed at achieving a consensual plan.

*Id.* at 593–94. No evidence has been presented which persuades me that the findings made and conclusions reached in the Fee Order were incorrect. I repeat the conclusion that the March 3, 1987 objection, March 9 memorandum of law, and March 20 supplemental objection were motivated by the improper purpose of intimidating the plaintiffs into acquiescing to Chase's § 506(b) fee application. Sanctions are therefore mandated by Rule 9011.

▇▇ The plaintiffs seek $37,499.50 for 256.4 hours of legal services allegedly required for their response to R & C's opposition to the plans, but a substantial number of those hours were unrelated to the sanctionable papers. For example, the plaintiffs' time records reveal that 65 hours were incurred prior to the filing of the first paper they identify, the March 3, 1987 objection to confirmation. The plaintiffs also seek sanctions to compensate them for approximately 67 hours for legal services incurred during a three day confirmation hearing, but on March 18, 1987, at the outset of that hearing, I issued an order that Chase and the other banks were unimpaired and had no standing to object to confirmation. *In re Wonder Corp. of America, supra,* 70 B.R. at 1019 n. 2. The plaintiffs have not justified any legal expense incurred responding to the defendants' objections after that ruling.

---

17. During oral argument, a Robinson & Cole attorney made a statement that prompts this note. Apart from stating that he could not imagine any improper reason for filing the allegedly sanctionable papers, he disclaimed the unthinkable by proclaiming that his firm had been founded in 1844, that he and another partner, who had worked on this case, had been in practice for over two decades, and that neither the firm nor either of them had any reason to nor would they sign and file any papers which would improperly obstruct the progress of this case.

I agree that R & C is a distinguished law firm and that it and the attorneys who have worked on this case are highly skilled practitioners who well deserve their excellent reputation in the legal community. That observation, however, does not establish a presumption that sanctionable conduct did not occur nor does it immunize them from sanctions if it did. In this case, as noted *infra,* they crossed the line into forbidden territory and sanctions are mandated.

I find that a substantial portion of the remaining 124 hours was either unrelated to Chase's objection, not explained, or explained in records that were largely unintelligible. For example, a number of hours were spent by the plaintiffs' attorneys communicating with attorneys for other banks with no attempt to relate that time to their response to R & C. In addition, many hours are designated as preparation for the confirmation hearing prior to my ruling that Chase had no standing, but no evidence was offered that R & C's objection caused more preparation time than would have been spent absent any objection. The plaintiffs' records indicate that there was duplication of work by P, C, B & R and L & M, as well as a large number of unexplained intra-office communications.

Taking all of those factors into account, I find that the plaintiffs are entitled to be compensated for 52 of the 256.4 hours of legal services for which they seek the imposition of sanctions. At the rates the various attorneys charged at the time the services were rendered, I conclude that the plaintiffs are entitled to a sanction against R & C of $5,392.50 for category 4. The sanction is allocated as follows:

*Wonder*—$975.00 (representing 3 hours by Attorney Greenberg of P, C, B & R at $100.00 per hour; 4.5 hours by Attorney Hoffman at $150 per hour).

*Waldco*—$4,417.50 (representing 2 hours by Attorney Belmonte of L & M at $190.00 per hour; 42.5 hours by Attorney Preston of L & M at $95 per hour).

█ The plaintiffs argue that the eight subpoenas identified in category 5, *supra* at 25–26, were defective due to various technical and service related flaws. Apart from the fact that no attorney from R & C signed any of the subpoenas, sanctions are not available for technical errors such as incorrect service.

█ The notices of the depositions were, however, signed by an attorney from R & C. In light of the fact that at the time the notices were signed R & C knew that Chase was to be paid the full amount of its allowed secured claim in cash on the effective date of the plan, I conclude that the depositions were intended to delay confirmation of the plan rather than for any proper purpose. The signing of the notices was therefore a sanctionable event.

█ In assessing an appropriate sanction, I have discounted the plaintiffs $6,811.75 request to reflect the unnecessary duplication of effort by attorneys from P, C, B & R and L & M. The plaintiffs' time records show that attorneys from both firms worked on the preparation of the motions to quash filed on March 9, 1987. There is no indication that the efforts of the two firms were aggregated in any way to produce that motion. I also find that it was not necessary for Attorney Belmonte of L & M to travel from New York to Hartford to argue the motions to quash, as Attorney Greenberg of P, C, B & R attended the hearing.

I find that the plaintiffs are entitled to be compensated for 20 of the 56.15 hours of legal services for which they seek the imposition of sanctions. At the rates the various attorneys charged at the time the services were rendered, I conclude that the plaintiffs are entitled to a sanction against R & C of $1,925 for category 5. The sanction is allocated as follows:

*Wonder*—$1,500.00 (representing 15 hours by Attorney Greenberg of P, C, B & R at $100 per hour).

*Waldco*—$425.00 (representing 5 hours by Attorney Riggs of L & M at $85 per hour).

█ The application signed and filed by R & C for § 506(b) fees, *see* category 6, *supra* at 26, is not sanctionable. While there may have been some misstatement in the fee application as to whether R & C had actually been paid by Chase, any such flaw was de minimis and does not subject R & C to sanctions. There was never any question that R & C worked the number of hours claimed in the application, so it cannot be said that the application had no basis in fact. It was not unreasonable for R & C to believe that their fee application would be tested by state rather than federal law and have been allowed under that analysis. *See Matter of Salisbury*, 58 B.R.

635, 640 (Bankr.D.Conn.1985). Moreover, since the application was signed and filed for no other purpose than to obtain the allowance of a § 506(b) fee, no improper purpose is found. Categories 7 and 8 are silent with respect to any violation of Rule 9011.

## B.

### Counterclaim under Rule 9011

 Two of the five counts in the defendants' counterclaim are clearly unavailing. Count 4 alleges a continuing violation of Rule 9011, but, as noted, the rule does not sanction "continuing" violations. *See supra* at 31. Count 5 alleges that the plaintiffs should be sanctioned for filing a motion to amend the appeal fund escrow agreement. The defendants cite *United States v. New England Teamsters and Trucking Indus. Pension Fund*, 737 F.2d 1274, 1278 (2d Cir.1984), and claim that "[t]he case law could not be any clearer. 'A party to a stipulation is not entitled to withdraw from its agreement unilaterally.' " *Defendants' Memorandum*, September 28, 1988, at 69. The rest of that Second Circuit holding carves out an exception to the principle enunciated by the defendants and states that "[a party is] bound ... unless it could obtain relief by action of the court.... Absent some extraordinary circumstance ... this Court is not free to reject a factual resolution that was agreed to by the parties and was deemed binding by the district court." *New England Teamsters, supra*, 737 F.2d at 1278. The plaintiffs' motion which sought relief from this court was based upon the intervening development that one of the banks, which had been secured by the escrow agreement, had withdrawn its appeal. Thus, contrary to the defendants' argument, the plaintiffs' motion properly relied on the *New England Teamsters* exception, it was not devoid of a legal or a factual basis, and it is not sanctionable under Rule 9011.

 The claims under counts 1, 2 and 3 have only slightly more merit. The defendants claim that the plaintiffs' motion, amended motion and complaint for sanctions were so lacking in specificity that they are sanctionable under Rule 9011. A mere lack of specificity, however, does not prove that the plaintiffs did not make a reasonable inquiry into the facts or that they could not have reasonably believed that facts existed which would support their claims. *See Foster v. Michelin Tire Corp.*, 108 F.R.D. 412, 415–16 (C.D.Ill.1985) ("allegations need not be perfect at their inception."). Moreover, other than making the allegation, the defendants have not pursued this claim.

 The defendants appear to claim that the complaint was filed to intimidate R & C into withdrawing Chase's appeal from the Fee Order, *Defendants' Outline* at 16, but the complaint was filed four months after the February 5, 1988 district court decision on that appeal. The claim that the motion and amended motion were made for the improper purpose of pressuring Chase to withdraw its appeal of the Fee Order is also unavailing. There is no evidence that the plaintiffs offered to withdraw the motions if Chase withdrew its appeal of the Fee Order.[18] The plaintiffs' decision to file the motions against the defendants alone, though there were two other banks in the case who may have filed sanctionable papers, may well have been the result of Chase's "lead" role in this case. *See In re Wonder Corp. of America, supra*, 72 B.R. at 593. Whatever the plaintiffs reason for pursuing the defendants alone, the defendants have provided no persuasive evidence that it was for some improper purpose.

---

18. The defendants filed a request that the plaintiffs admit that Attorney Strauss of P, C, B & R offered to withdraw the sanctions motions if Chase would withdraw its appeal of the Fee Order, but that request was objected to and was never admitted. *Defendants' Outline*, Exhibits 13 and 14. It may be that there were some settlement negotiations which included the mutual withdrawal of certain pending matters, but no evidence has been offered from which a conclusion may be drawn that the plaintiffs' motions were filed to coerce the defendants into withdrawing their appeal of the Fee Order.

 I agree with the defendants that the plaintiffs' claim against Chase under § 1927 had no basis in law. That one defect does not, however, undermine the entire complaint. Further, it is unlikely that the defendants sustained any damages as a result of that claim, as the research to discover that it was baseless could have taken no more than a few minutes.[19]

## CONCLUSION

Much of what has been written here is a preamble to the observation that during the course of this case, the attorneys on both sides have crossed the line between aggressive advocacy, which is to be encouraged, and excessive opposition for which fees may not be allowed and sanctions must be imposed in instances where § 1927 and Rule 9011 are implicated. For example, L & M spent 784.5 hours responding to R & C's allegedly sanctionable conduct, including 454 hours on this sanctions action. P, C, B & R spent 150 hours on this sanctions action. This response by the plaintiffs' attorneys, particularly L & M, was occasionally excessive or untenable or both. As the Seventh Circuit has ruled in the context of allowable fees, the reasonableness test

> looks not only to the hours and billing rate involved in responding to the other party's sanctionable conduct, but also to the appropriateness of the response taken. A party defending against a frivolous paper has a duty under Rule 11 to mitigate its legal fees and expenses by resolving frivolous issues quickly and efficiently.... Counsel "must mitigate damages by correlating his response, in terms of hours and funds expended, to the merit of the claims." ... [T]he court must consider to what extent a defending party's injury could have been avoided or was self-inflicted.

*Dubisky v. Owens,* 849 F.2d 1034, 1037 (7th Cir.1988) (quoting *INVST Financial Group, Inc. v. Chem–Nuclear Sys., Inc.,* 815 F.2d 391, 404 (6th Cir.1987), *cert. de-*

---

**19.** So that the plaintiffs will not read my conclusion that no sanctions should be awarded on the counterclaim as a signal to file another sanctions action against the defendants, I now find

*nied,* 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987)).

For the foregoing reasons, IT IS ORDERED that judgment enter in the complaint in favor of the plaintiff Wonder in the amount of $2,475.00 and in favor of the plaintiff Waldco in the amount of $4,842.50, and against the defendant Robinson & Cole in the amount of $7,317.50, and it is FURTHER ORDERED that judgment enter in favor of the counterdefendants on the counterclaim.

that the counterclaim was not filed for an improper purpose nor, when taken as a whole, is it lacking either a factual or legal basis.